Exhibit 1

## NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4515

——

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

March 1, 2004

DAVID J. SHEIKH
VASILIOS D. DOSSAS
ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK

**Via Federal Express**

Mr. Michael J. Merriman
Chief Executive Officer
Royal Appliance Mfg. Co.
7005 Cochran Road
Glenwillow, Ohio 44139-4303

     Re:   Black & Decker U.S. Patent No. 5,388,303

Dear Mr. Merriman:

We represent Black & Decker in the licensing and enforcement of its patent rights, including U.S. Patent No. 5,388,303 (the "'303 patent") issued on February 14, 1995, entitled "Vacuum Cleaner With Extendable Hose And Brush Disengagement."

We have carefully analyzed the '303 patent and file history, along with Royal's Platinum Force and Power Reach hand vacuums. Based upon our review of these Royal products, we believe the Platinum Force and Power Reach hand vacuums may be covered by the '303 patent.

We are prepared to cooperate fully in facilitating your evaluation of the '303 patent and its application to Royal's Platinum Force and Power Reach hand vacuums. Please let us know if there is any specific feature that you believe should be addressed in detail and we will promptly respond to your request.

Because of the importance to Black & Decker of resolving this matter, a timely response from you or your patent counsel would be appreciated. To that end, we welcome telephone inquiries or an early personal meeting. We also look forward to your prompt reply.

Sincerely,

Paul C. Gibbons

PCG/mm
cc:   John D. Del Ponti

Exhibit 2

# FAY. SHARPE. FAGAN. MINNICH & McKEE. LLP

PATENT TRADEMARK AND COPYRIGHT LAW

1100 SUPERIOR AVENUE

SEVENTH FLOOR

CLEVELAND. OHIO 44114-2579

TELEPHONE (216) 861-5582

FAX (216) 241-1666

E-MAIL: fs@faysharpe.com

April 5, 2004

MARK E. BANDY
JOSEPH D. DREHER
CHRISTOPHER B. FAGAN
JUDE A. FRY
STEVEN M. HAAS
MICHAEL E. HUDZINSKI
RICHARD M. KLEIN
THOMAS E. KOCOVSKY, JR
SANDRA M. KOENIG
SCOTT A. McCOLLISTER
JAMES W. McKEE
JAY F. MOLDOVANYI

PHILIP J. MOY, JR.
TIMOTHY E. NAUMAN
PATRICK R. ROCHE
MARK S. SVAT
BRIAN E. TURUNG
ROBERT V. VICKERS

OF COUNSEL
E. KENT DANIELS, JR.
RICHARD J. MINNICH
THOMAS E. YOUNG

ALAN C. BRANDT
JOHN P. CORNELY
MATTHEW P. DUGAN
PATRICK D. FLOYD
COLLEEN FLYNN GOSS
KARL W. HAUBER
ERIK J. OVERBERGER
SUE ELLEN PHILLIPS
JAMES E. SCARBROUGH
ANN M. SKERRY, PH.D.
SCOTT M. SLABY

GREGORY S. VICKERS
JOSEPH E. WATERS
JONATHAN A. WITHROW
JOHN S. ZANGHI

REGISTERED PATENT AGENTS
ROBERT M. SIEG, PH.D.
THOMAS TILLANDER
MARINA V. ZALEVSKY

ALBERT P. SHARPE, III
1959-2001

Patrick R. Roche
proche@faysharpe.com

Mr. Paul C. Gibbons
Niro, Scavone, Haller & Niro
181 West Madison Street – Suite 4600
Chicago, Illinois 60602

**VIA FACSIMILE**
**(312.236.3137 – 1 page)**

Re:    Black & Decker U.S. Patent No. 5,388,303
       Our Reference:  RYLZ 3 01103

Dear Mr. Gibbons:

We represent Royal Appliance Mfg. Co. in its patent matters.  Your letter of March 1, 2004 to Michael Merriman has been referred to our office.  We are investigating the matter and upon conclusion of the discussions with Royal of our findings, we will be back in touch with you.

Please accommodate us a few weeks.

Very truly yours,

FAY, SHARPE, FAGAN,
MINNICH & McKEE, LLP

Patrick R. Roche

PRR:ct
cc:    Royal Appliance Mfg. Co.

N:\RYLZ\301103\CNT0000534V001.doc

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4515

———

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

April 27, 2004

DAVID J. SHEIKH
VASILIOS D. DOSSAS
ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK

**Via Federal Express**

Mr. Michael J. Merriman
Chief Executive Officer
Royal Appliance Mfg. Co.
7005 Cochran Road
Glenwillow, Ohio 44139-4303

Re:    Black & Decker U.S. Patent No. 5,388,303

Dear Mr. Merriman:

On March 1, 2004, we wrote to you concerning Black & Decker's U.S. Patent No. 5,388,303. Our letter included the identification of Royal's Platinum Force and Power Reach hand vacuums which we believe are covered by the claims of the '303 patent based upon our analysis of those products. In turn, we asked Royal to evaluate the '303 patent and its application to the Royal hand vacuums we identified. Unfortunately, we have not yet received the courtesy of a response.

As you can appreciate, Black & Decker considers its patent and other intellectual property rights essential to its on-going success. In the interest of attempting to avoid the enormous expense and risk which comes with litigation, however, we would like to discuss reaching an amicable resolution with Royal regarding those products we believe are covered by the '303 patent.

In that regard, and as indicated previously, Black & Decker is prepared to assist Royal in its evaluation of the '303 patent and address any questions which may arise as a result of your investigation. Please let us know when you have concluded your review of the '303 patent. I look forward to your response.

Sincerely,

Paul C. Gibbons

PCG/mm
cc:    John D. Del Ponti

## FAY, SHARPE, FAGAN, MINNICH & MCKEE, LLP
### 1100 SUPERIOR AVENUE, SEVENTH FLOOR
### CLEVELAND, OHIO 44114-2518
### Telephone: (216) 861-5582
### Facsimiles: (216) 241-1666 and (216) 241-5147

### Please call us immediately at (216) 861-5582 if this transmission is incomplete or illegible.

DATE:              April 29, 2004

ATTENTION:         Paul C. Gibbons

TO:                Niro, Scavone, Haller & Niro

FACSIMILE NO.:     1.312.236.3137

FROM:              Patrick R. Roche

RE:                Black & Decker U.S. Patent No. 5,388,303

Total Number of Pages (including this cover sheet)  2

Dear Mr. Gibbons:

With reference to your letter dated April 27, 2004 to Mr. Merriman at Royal Appliance Mfg. Co., attached is a copy of our letter dated April 5, 2004 to you. We expect to get back to you shortly.

Patrick R. Roche

The documents accompanying this facsimile transmission include information from the firm of Fay, Sharpe, Fagan, Minnich & McKee, LLP that might be legally privileged and/or confidential. The information is intended for the use of only the individual or entity named on this cover sheet. If you are not the intended recipient, any disclosure, copying, or distribution of these documents, or the taking of any action based on the contents of this transmission, is prohibited. If you have received this transmission in error, these documents should be returned to this firm as soon as possible, and we ask that you notify us immediately by telephone so we can arrange for their return to us without cost to you.

L:\CNT\DATA\PRR\000FAXES\FORM.FAX

# FAX TRANSMITTAL SHEET

# NIRO SCAVONE HALLER & NIRO

181 W. MADISON, STE. 4600
Chicago, IL  60602
(312) 236-0733

*Date:*                                   *April 29, 2004*

*Fax to:*                                 *Patrick R. Roche*

*Recipient's Fax:*                  *216-241-1666*

*From:*                                   *Paul C. Gibbons*

*Number of pages:*               2
*(including transmittal sheet)*

*Comments:*

*IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL Mary Martin - -
312/236-0733.*

## CONFIDENTIALITY NOTICE

*This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the documents.*

## NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4515

————

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

DAVID J. SHEIKH
VASILIOS D. DOSSAS
ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK

April 29, 2004

**Via Facsimile: (216) 241-1666**

Mr. Patrick R. Roche
Fay, Sharpe, Fagan, Minnich & McKee
1100 Superior Ave., 7th Floor
Cleveland, OH 44114-2518

    Re:   Black & Decker U.S. Patent No. 5,388,303

Dear Mr. Roche:

    Thank you for your fax this morning. The April 5 letter you attached was never received by us, necessitating my April 27 letter to Mr. Merriman.

    In your April 5 letter you apparently asked for the accommodation of a few weeks. Almost four weeks have passed in the interim. When do you think you will be in a position to respond?

    I look forward to your timely response.

Sincerely,

Paul C. Gibbons

PCG/mm
cc:    John D. Del Ponti

# FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP

PATENT TRADEMARK AND COPYRIGHT LAW

1100 SUPERIOR AVENUE

SEVENTH FLOOR

MARK E. BANDY
JOSEPH D. DREHER
CHRISTOPHER B. FAGAN
JUDE A. FRY
STEVEN M. HAAS
MICHAEL E. HUDZINSKI
RICHARD M. KLEIN
THOMAS E. KOCOVSKY, JR.
SANDRA M. KOENIG
SCOTT A. McCOLLISTER
JAMES W. McKEE
JAY F. MOLDOVANYI

PHILIP J. MOY, JR.
TIMOTHY E. NAUMAN
PATRICK R. ROCHE
MARK S. SVAT
BRIAN E. TURUNG
ROBERT V. VICKERS

Of Counsel

E. KENT DANIELS, JR.
RICHARD J. MINNICH
THOMAS E. YOUNG

CLEVELAND, OHIO 44114-2579

TELEPHONE (216) 861-5582

FAX (216) 241-1666

E-MAIL: fs@faysharpe.com

ALAN C. BRANDT
JOHN P. CORNELY
MATTHEW P. DUGAN
PATRICK D. FLOYD
COLLEEN FLYNN GOSS
KARL W. HAUBER
ERIK J. OVERBERGER
SUE ELLEN PHILLIPS
JAMES E. SCARBROUGH
ROBERT A. SIDOTI
ANN M. SKERRY, PH.D.
SCOTT M. SLABY

GREGORY S. VICKERS
JOSEPH E. WATERS
JONATHAN A. WITHROW
JOHN S. ZANGHI

REGISTERED PATENT AGENTS
ROBERT M. SIEG, PH.D.
THOMAS TILLANDER
GUOSHENG WANG, PH.D.
JEFFREY N. ZAHN
MARINA V. ZALEVSKY

ALBERT P. SHARPE, III
1959-2001

jmoldovanyi@faysharpe.com
Direct Dial (216) 363-9127

June 1, 2004

Paul C. Gibbons, Esq.
Niro, Scavone, Haller & Niro
181 West Madison Street - Suite 4600
Chicago, Illinois 60602

Re:   Black & Decker U.S. Patent No. 5,388,303

Dear Mr. Gibbons:

Further to our letter of April 5, 2004, we have now had an opportunity to review the file history of the Black & Decker 5,388,303 patent (the '303 patent). As a result of that review, Royal responds as follows to your letter of March 1, 2004.

In our view, the Royal Platinum Force and Power Reach hand vacuums do not infringe the claims of the '303 patent. Initially, we note that the Royal products do not have a hose located on an exterior of the housing with a first end of the hose being connected to an intake section of the housing. In the Royal hand vacuums, a first end of the hose is connected to a suction nozzle, which is not part of the housing. Rather, the suction nozzle is spaced from the housing so that it can be used in a manner physically separated from the housing.

This is in contrast to the vacuum cleaner claimed in the '303 patent in which the suction nozzle or intake section is part of the housing. In this connection, it is stated in the '303 patent's specification that:

"(t)he bottom housing 26 also forms part of a nozzle 38 at the intake section 32 that the front end of the hose 22 is connected to. The top housing 28 also forms part of the nozzle 38...The nozzle 38 forms a

Paul C. Gibbons, Esq.
June 1, 2004
Page 2

conduit to the interior of the intake section 32...The top housing 28 also includes a second nozzle 42 located proximate the rear end 36 of the housing that the second end of the hose 22 is connected to." (see column 3, lines 6-16).

Further, it is stated that:

"The housing members 26a, 26b and 28 and handle 30 form a unitary substantially rigid housing." (see column 2, line 68 to column 3, line 2)

The Royal hand vacuums also have a unitary housing, with an inlet of the housing being located at a rear end thereof. The Royal design thus has the "second nozzle" mentioned in the '303 patent. That "nozzle" is connected to a second end of the Royal hose. The first end of Royal's hose is connected to a suction nozzle, which is a separate element and not part of the housing. In fact, the Royal suction nozzle is employed separately from the housing, which is the reason the Power Reach nozzle is so called. The Platinum Force hand vac has the same design. Thus, unlike the vacuum cleaner which is claimed in Black & Decker's '303 patent, there is no "intake section of the housing" in the Royal hand vacs.

If anything can be termed the "intake section of the housing" in the Royal designs, it would have to be the portion which is termed in the '303 patent's claims as "a second end connected to the source of vacuum". As mentioned, this portion is identified as the "second nozzle 42" in the specification of the '303 patent. In sum, the Royal designs, which employ a freely movable suction nozzle that is a separate element from the housing, have a significantly different design than the subject matter claimed in the '303 patent including "an intake section of the housing".

Moreover, the "means" for allowing removal of the first end of the hose from the intake section is somewhat different in the Royal hand held vacuums than the "means" which is taught in the '303 patent. The Royal device uses a sleeve to which a hose is releasably attached via a rotatable cuff. In contrast, the '303 patent teaches a front cuff 92 which is snap fit onto a collar 40 of nozzle 38 (see column 6, lines 23-27). Alternatively, a latch 41 (such as a leaf spring) could be used to prevent the cuff from disconnecting from the nozzle (see column 6, lines 23-27). Significantly, there is no teaching or disclosure of a rotatable cuff in the '303 patent. Therefore, the rotatable cuff employed in the Royal hand vacs is outside the scope of claim coverage of the "means" which is recited in the claims of the '303 patent.

Paul C. Gibbons, Esq.
June 1, 2004
Page 3

In addition, the Royal devices do not have a hose with "a relatively compact free-standing arch shape when connected between the intake section and the source of vacuum" as recited in claim 1 of the '303 patent. In the Royal hand vacuums, the hose is not "relatively compact", since it extends the entire length of the hand held vacuum cleaner. This is in contrast to the relatively compact shape of the hose which is claimed in the Black & Decker '303 patent and is disclosed in the drawings thereof.

For all these reasons, the Royal hand held vacuums are not covered by claim 1 of the '303 patent. Similarly, dependent claims 2-6 and 11, since they depend from claim 1, are also avoided by the Royal designs.

Independent claim 7 similarly recites "an intake section of the housing". As mentioned above, the Royal hand vacuums do not have an intake section of the housing, other than having a second end of the hose being connected to a source of vacuum contained within the housing. In addition, the "means" for allowing removal of the first end of the hose is different in the Royal design, as discussed above.

Moreover, claim 7 recites a "means for automatically stopping the brush from being driven when the first end of the hose is removed from the intake section." In the Royal Power Reach hand vacuum, the brush is turbine driven. It is not driven by an electric motor. Therefore, it is the absence of a suction being drawn through the nozzle which stops rotation of the brush. This is in contrast with the "means" disclosed in the Black & Decker '303 patent, wherein a belt shifter is employed to stop rotation of the brush roll 24 when the hose 22 is detached. The belt shifter mechanism is described in detail in column 7 of the '303 patent. Such a "means for automatically stopping the brush" is vastly different from the ceasing of a suction airflow to stop an air turbine driving the brush roll, as employed in the Royal Power Reach hand vacuum. Thus, this Royal device is outside the scope of the language of claim 7.

In the Royal Platinum Force hand vacuum, an electrified hose is used. When the hose is disconnected from the nozzle head, power is cut off to a brush roll motor held in the nozzle head, thereby stopping further rotation of the brush roll. This design is, again, vastly different from the "means" recited in claim 7 of the '303 patent, and is outside the scope thereof.

As a result, it is our opinion that the Royal designs avoid claim 7 of the '303 patent. Since claim 7 is avoided, so are its dependent claims 8, 9 and 12.

As to claim 10, the Royal hand vacuums do have a "unitary rigid portable hand held housing" as recited in that claim. But, the intake section is not formed by the

Paul C. Gibbons, Esq.
June 1, 2004
Page 4


unitary rigid portable hand held housing. As discussed above, in the Royal design, the
intake section or suction nozzle is a separate element apart from the unitary housing. A
hose is needed to operatively connect the suction nozzle to the housing. Therefore,
claim 10 is also avoided by the Royal designs.

Since claim 10 is avoided, so is its dependent claim 13.

After a review of the foregoing, we trust you will agree that the two Royal hand
held vacuum designs discussed herein avoid all of the claims of the Black & Decker
'303 patent.

Very truly yours,

FAY, SHARPE, FAGAN,
MINNICH & McKee, LLP

Patrick R. Roche

PRR/JFM/kan

cc: Royal Appliance Mfg. Co.

N:\RYLZ\301103\KAN0001583V001.doc

## NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE

181 WEST MADISON STREET- SUITE 4600

CHICAGO, ILLINOIS 60602-4515

——

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

DAVID J. SHEIKH
VASILIOS D. DOSSAS
ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK

**Communication Pursuant to Rule 408, Fed.R.Evid.**

August 18, 2004

**Facsimile: (216) 241-1666**

Patrick R. Roche
Fay, Sharpe, Fagan, Minnich & McKee
1100 Superior Avenue, 7th Floor
Cleveland, Ohio 44114-2518

    Re:    Black & Decker U.S. Patent No. 5,388,303

Dear Pat:

    Thanks for your voice message last week. As you requested, Black & Decker makes the following written settlement proposal.

    Black & Decker is willing to grant Royal a full release for the past and a non-exclusive license going forward under its '303 patent for both the Royal Platinum Force and Power Reach products. Black & Decker proposes a lump sum of $750,000 for the release and a royalty of 9% for all future sales. Black & Decker feels that this is fair and reasonable, given its solid position on infringement and the license rates granted on comparable patents in the past. For example, in a case against Porter Cable, a jury found a reasonable royalty of 18%, and we obtained royalties exceeding defendant's sales price in other patent litigation.

    After reviewing your June 1 letter in considerable detail, we can state that Black & Decker strongly disagrees with your basis for noninfringement. It seems Royal's arguments rely more on semantics than any real functional differences, such as your assertion that the "suction nozzle" is a separate component "which is not part of the housing," even when entirely connected together.

    Nonetheless, Black & Decker has no intention of initiating any litigation against Royal at this time. Instead, Black & Decker would like to focus its efforts toward negotiating an amicable solution. We look forward to your earliest possible response.

                    Sincerely,

                    Raymond P. Niro, Jr.

RPNjr/sls

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4515

———

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

DAVID J. SHEIKH
VASILIOS D. DOSSAS
ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK

**Communication Pursuant to Rule 408, Fed.R.Evid.**

September 15, 2004

**Facsimile: (216) 241-1666**

Patrick R. Roche
Fay, Sharpe, Fagan, Minnich & McKee
1100 Superior Avenue, 7th Floor
Cleveland, Ohio 44114-2518

Re:   Black & Decker U.S. Patent No. 5,388,303

Dear Pat:

It has been nearly one month since we sent you the attached settlement proposal. Please provide us with Royal's earliest possible response. Thanks for your cooperation.

Sincerely,

Raymond P. Niro, Jr.

RPNjr/sls

# NIRO, SCAVONE, HALLER & NIRO

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4515

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE

DAVID J. SHEIKH
VASILIOS D. DOSSAS
ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK

## Communication Pursuant to Rule 408, Fed.R.Evid.

August 18, 2004

**Facsimile: (216) 241-1666**

Patrick R. Roche
Fay, Sharpe, Fagan, Minnich & McKee
1100 Superior Avenue, 7th Floor
Cleveland, Ohio 44114-2518

Re:   Black & Decker U.S. Patent No. 5,388,303

Dear Pat:

Thanks for your voice message last week. As you requested, Black & Decker makes the following written settlement proposal.

Black & Decker is willing to grant Royal a full release for the past and a non-exclusive license going forward under its '303 patent for both the Royal Platinum Force and Power Reach products. Black & Decker proposes a lump sum of $750,000 for the release and a royalty of 9% for all future sales. Black & Decker feels that this is fair and reasonable, given its solid position on infringement and the license rates granted on comparable patents in the past. For example, in a case against Porter Cable, a jury found a reasonable royalty of 18%, and we obtained royalties exceeding defendant's sales price in other patent litigation.

After reviewing your June 1 letter in considerable detail, we can state that Black & Decker strongly disagrees with your basis for noninfringement. It seems Royal's arguments rely more on semantics than any real functional differences, such as your assertion that the "suction nozzle" is a separate component "which is not part of the housing," even when entirely connected together.

Nonetheless, Black & Decker has no intention of initiating any litigation against Royal at this time. Instead, Black & Decker would like to focus its efforts toward negotiating an amicable solution. We look forward to your earliest possible response.

Sincerely,

Raymond P. Niro, Jr.

RPNjr/sls

# FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP

### PATENT TRADEMARK AND COPYRIGHT LAW

1100 SUPERIOR AVENUE

SEVENTH FLOOR

CLEVELAND, OHIO 44114-2579

TELEPHONE (216) 861-5582

FAX (216) 241-1666

WEB: www.faysharpe.com

MARK E. BANDY
JOSEPH D. DREHER
CHRISTOPHER B. FAGAN
JUDE A. FRY
STEVEN M. HAAS
MICHAEL E. HUDZINSKI
RICHARD M. KLEIN
THOMAS E. KOCOVSKY, JR.
SANDRA M. KOENIG
SCOTT A. McCOLLISTER
JAMES W. McKEE
JAY F. MOLDOVANYI

PHILIP J. MOY, JR.
TIMOTHY E. NAUMAN
PATRICK R. ROCHE
MARK S. SVAT
BRIAN E. TURUNG
ROBERT V. VICKERS

OF COUNSEL

E. KENT DANIELS, JR.
RICHARD J. MINNICH
THOMAS E. YOUNG

ALAN C. BRANDT
JOHN P. CORNELY
MATTHEW P. DUGAN
PATRICK D. FLOYD
COLLEEN FLYNN GOSS
KARL W. HAUBER
ERIK J. OVERBERGER
SUE ELLEN PHILLIPS
JAMES E. SCARBROUGH
ROBERT A. SIDOTI
ANN M. SKERRY, PH.D.
SCOTT M. SLABY

GREGORY S. VICKERS
JOSEPH E. WATERS
JONATHAN A. WITHROW
JOHN S. ZANGHI

REGISTERED PATENT AGENTS
ROBERT M. SIEG, PH.D.
THOMAS TILLANDER
GUOSHENG WANG, PH.D.
JEFFREY N. ZAHN
MARINA V. ZALEVSKY

ALBERT P. SHARPE, III
1959-2001

**VIA FACSIMILE**

October 4, 2004

Patrick R. Roche
proche@faysharpe.com

Raymond Niro, Jr., Esq.
Niro, Scavone, Haller & Niro
181 West Madison Street
Suite 4600
Chicago, Illinois 60602-4515

Re:     Black & Decker U.S. Patent No. 5,388,303
        Our Reference   RYLZ 3 01103

Dear Ray:

Your letter of August 18, 2004 and reminder of September 15, 2004 have been shared with Royal Appliance Mfg. Co.  Unfortunately, Royal believes your settlement offer is completely unrealistic.

Royal maintains its position of non-infringement.  Further, it is our understanding that Black & Decker has never sold a product protected by this patent. Accordingly, in view of its firm belief of no liability, and the fact that only a "paper" patent is involved, Royal is only willing to offer a modest settlement amount to end the matter.  We have been authorized to offer $50,000 as a lump sum payment for a fully paid up license.

Very truly yours,

FAY, SHARPE, FAGAN,
MINNICH & McKEE, LLP

Patrick R. Roche

PRR:ct
cc:     Royal Appliance Mfg. Co.

L:\CNT\CNT\DATA\PRR\2004 misc\Black and Decker ltr.doc

**NIRO, SCAVONE, HALLER & NIRO**
**181 WEST MADISON STREET - SUITE 4600**
**CHICAGO, ILLINOIS  60602-4515**
**TELEPHONE NO. (312) 236-0733**
**FACSIMILE NO. (312) 236-3137**

TO:        Pat Roche

FROM:      Raymond Niro Jr.

DATE:      October 22, 2004              TIME:        10:43 am

TOTAL NUMBER OF PAGES (including cover page): ____4____. If you do not receive all of the

pages, please call (312) 236-0733 and ask for Susan Swierk.

**COMMENTS:**

**The enclosed facsimile may contain confidential information and is intended only for**

**the named recipient.**   If this facsimile has been sent to you in error, please contact Susan Swierk

immediately.

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS

181 WEST MADISON STREET- SUITE 4600

CHICAGO, ILLINOIS 60602-4515

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

**Communication Pursuant to Rule 408, Fed.R.Evid.**

October 22, 2004

ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY

**Email: proche@faysharpe.com**
**Facsimile: (216) 241-1666**

Patrick R. Roche
Fay, Sharpe, Fagan, Minnich & McKee
1100 Superior Avenue, 7th Floor
Cleveland, Ohio  44114-2518

    Re:   Black & Decker U.S. Patent No. 5,388,303

Dear Pat:

We have reviewed your letter of October 4, 2004.  Black & Decker rejects Royal's offer of $50,000 for a fully paid-up license.

Your proposal is based on Royal's "firm belief" in its position of noninfringement. Black & Decker has an equally firm belief that Royal is liable for infringing its '303 patent. Perhaps we will not be able to convince each other of our respective positions on the merits, but it is hard to believe that Royal is assessing no risk of liability, particularly given the strength of the '303 patent and the clear read on Royal's products.

Royal also contends (mistakenly) that Black & Decker has never sold a product covered  by the '303 patent, and "the fact that only a 'paper' patent is involved" justifies such a minimal settlement offer. First, Black & Decker did commercialize its '303 patent (see attached photos).  Second, there is no case law supporting your position that patent infringement is somehow acceptable provided that only a so-called "paper" patent is involved.  Royal's proposal is therefore premised on two incorrect assumptions.

In addition, Royal's offer does not account for the substantial volume of sales of the accused Platinum Force and Power Reach products, which we understand would range in the tens of millions of dollars for the past and future.  The potential exposure to Royal far exceeds the amount that Black & Decker is currently offering in settlement.

Patrick R. Roche
October 22, 2004
Page 2
**Rule 408, Fed.R.Evid.**

        With that in mind, Black & Decker remains interested in focusing its efforts toward reaching an amicable solution, rather than having the dispute decided through litigation. Therefore, to conclude this matter without any further expenditure of time and resources, Black & Decker has authorized us to reduce its offer to $500,000 for the past and a 5% royalty going forward. Again, this proposal will only be acceptable to Black & Decker only if we can reach a quick resolution.

        We look forward to your prompt response.

                        Sincerely,

                        Raymond /sls

                        Raymond P. Niro, Jr.

RPNjr/sls
Enclosures





**NIRO, SCAVONE, HALLER & NIRO**
**181 WEST MADISON STREET - SUITE 4600**
**CHICAGO, ILLINOIS 60602-4515**
**TELEPHONE NO. (312) 236-0733**
**FACSIMILE NO. (312) 236-3137**

TO:        Pat Roche

FROM:    Raymond Niro Jr.

DATE:    November 18, 2004          TIME:        1:14 pm

TOTAL NUMBER OF PAGES (including cover page): ____**2**____. If you do not receive all of the

pages, please call (312) 236-0733 and ask for Susan Swierk.

**COMMENTS:**


**The enclosed facsimile may contain confidential information and is intended only for**

**the named recipient.**   If this facsimile has been sent to you in error, please contact Susan Swierk

immediately.

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS

181 WEST MADISON STREET - SUITE 4600

CHICAGO, ILLINOIS 60602 - 4515

———

TELEPHONE (312) 236 - 0733

FACSIMILE (312) 236 - 3137

**Communication Pursuant to Rule 408, Fed.R.Evid.**

November 18, 2004

ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY

**Email: proche@faysharpe.com**
**Facsimile: (216) 241-1666**

Patrick R. Roche
Fay, Sharpe, Fagan, Minnich & McKee
1100 Superior Avenue, 7th Floor
Cleveland, Ohio 44114-2518

  Re: Black & Decker U.S. Patent No. 5,388,303

Dear Pat:

  Please provide Royal's earliest possible response to my October 22, 2004 letter. Black & Decker has indicated that it would like us to expedite our settlement. Thanks.

        Sincerely,

        Raymond P. Niro, Jr.

RPNjr/sls

# FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP

PATENT TRADEMARK AND COPYRIGHT LAW

1100 SUPERIOR AVENUE

SEVENTH FLOOR

CLEVELAND, OHIO 44114-2579

TELEPHONE (216) 861-5582

FAX (216) 241-1666

WEB: www.faysharpe.com

MARK E. BANDY
JOSEPH D. DREHER
CHRISTOPHER B. FAGAN
JUDE A. FRY
STEVEN M. HAAS
MICHAEL E. HUDZINSKI
RICHARD M. KLEIN
THOMAS E. KOCOVSKY, JR.
SANDRA M. KOENIG
SCOTT A. McCOLLISTER
JAMES W. McKEE
JAY F. MOLDOVANYI

PHILIP J. MOY, JR.
TIMOTHY E. NAUMAN
PATRICK R. ROCHE
MARK S. SVAT
BRIAN E. TURUNG
ROBERT V. VICKERS

OF COUNSEL

E. KENT DANIELS, JR.
RICHARD J. MINNICH
THOMAS E. YOUNG

ALAN C. BRANDT
JOHN P. CORNELY
MATTHEW P. DUGAN
PATRICK D. FLOYD
COLLEEN FLYNN GOSS
KARL W. HAUBER
ERIK J. OVERBERGER
SUE ELLEN PHILLIPS
JAMES E. SCARBROUGH
ROBERT A. SIDOTI
ANN M. SKERRY, PH.D.
SCOTT M. SLABY

GREGORY S. VICKERS
JOSEPH E. WATERS
JONATHAN A. WITHROW
JOHN S. ZANGHI

REGISTERED PATENT AGENTS
ROBERT M. SIEG, PH.D.
THOMAS TILLANDER
GUOSHENG WANG, PH.D.
JEFFREY N. ZAHN
MARINA V. ZALEVSKY

ALBERT P. SHARPE, III
1989-2001

December 2, 2004

Patrick R. Roche
proche@faysharpe.com

Raymond P. Niro, Jr., Esq.
Niro, Scavone, Haller & Niro
181 West Madison Street
Suite 4600
Chicago, Illinois 60602-4515

> Re:   Black & Decker U.S. Patent No. 5,388,303
>       Our Reference:  RYLZ 3 01103

Dear Ray:

Responsive to your letter of October 22, 2004, Royal was a little surprised that Black & Decker had in fact commercialized a product under the '303 patent. Since that time our efforts to locate any of the product have been unsuccessful, and so now we are asking for your help.

We do not dispute your point concerning "paper" patents. On the other hand, we are more interested in its evidentiary relevance to a royalty rate determination. Accordingly, when was the last time Black & Decker sold any of its COLLECTOR product? We know that the registration was canceled in 2001. Could you give us an indication of the sale value. Was the product sold with the appropriate constructive notice patent markings? We wonder if there is a decent argument that the Royal sales prior to the date of your actual notice letter are exempt. Lastly, are there any licenses under the patent?

Very truly yours,

FAY, SHARPE, FAGAN,
MINNICH & McKEE, LLP

Patrick R. Roche

PRR:ct
cc:    Royal Appliance Mfg.

N:\RYLZ\301103\CNT0001456V001.doc

**NIRO, SCAVONE, HALLER & NIRO**
**181 WEST MADISON STREET - SUITE 4600**
**CHICAGO, ILLINOIS 60602-4515**
**TELEPHONE NO. (312) 236-0733**
**FACSIMILE NO. (312) 236-3137**

TO:      Pat Roche

FROM:    Raymond Niro Jr.

DATE:    December 16, 2004          TIME:    10:32 am

TOTAL NUMBER OF PAGES (including cover page): ___**2**___. If you do not receive all of the

pages, please call (312) 236-0733 and ask for Susan Swierk.

**COMMENTS:**

The enclosed facsimile may contain confidential information and is intended only for

the named recipient. If this facsimile has been sent to you in error, please contact Susan Swierk

immediately.

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4515

———

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

**Communication Pursuant to Rule 408, Fed.R.Evid.**

December 16, 2004

ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY

**Email: proche@faysharpe.com**
**Facsimile: (216) 241-1666**

Patrick R. Roche
Fay, Sharpe, Fagan, Minnich & McKee
1100 Superior Avenue, 7th Floor
Cleveland, Ohio 44114-2518

Re:    Black & Decker U.S. Patent No. 5,388,303

Dear Pat:

As indicated previously in my voice message, we are in the process of gathering the documents and information referenced in your December 2, 2004 letter. We have requested information from you as well, including past sales volumes and projections for the accused products, profit margins and the like. This can certainly be handled under an appropriate confidentiality agreement.

Please let me know when you are ready to exchange this information, so that we can progress with the settlement discussions.

Sincerely,

Raymond P. Niro, Jr.

RPNjr/sls

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4515

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

**Communication Pursuant to Rule 408, Fed.R.Evid.**

January 13, 2005

ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY

**Email: proche@faysharpe.com**
**Facsimile: (216) 241-1666**

Patrick R. Roche
Fay, Sharpe, Fagan, Minnich & McKee
1100 Superior Avenue, 7th Floor
Cleveland, Ohio 44114-2518

　　　Re:　Black & Decker U.S. Patent No. 5,388,303

Dear Pat:

　　　Please provide your response to our letter of December 16, 2004. Black & Decker would like to expedite our settlement discussions if possible.

　　　　　　　　　Sincerely,

　　　　　　　　　Raymond /sls

　　　　　　　　　Raymond P. Niro, Jr.

RPNjr/sls

Exhibit 3

# FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP

### PATENT TRADEMARK AND COPYRIGHT LAW

MARK E. BANDY
JOHN P. CORNELY
JOSEPH D. DREHER
JUDE A. FRY
STEVEN M. HAAS
MICHAEL E. HUDZINSKI
RICHARD M. KLEIN
THOMAS E. KOCOVSKY, JR.
SANDRA M. KOENIG
SCOTT A. McCOLLISTER
JAMES W. McKEE
JAY F. MOLDOVANYI
PHILIP J. MOY, JR.
TIMOTHY E. NAUMAN

PATRICK R. ROCHE
JAMES E. SCARBROUGH
ANN M. SKERRY, PH.D.
MARK S. SVAT
BRIAN E. TURUNG
GREGORY S. VICKERS
ROBERT V. VICKERS

OF COUNSEL

E. KENT DANIELS, JR.
CHRISTOPHER B. FAGAN
RICHARD J. MINNICH
THOMAS E. YOUNG

1100 SUPERIOR AVENUE

SEVENTH FLOOR

CLEVELAND, OHIO 44114-2579

TELEPHONE (216) 861-5582

FAX (216) 241-1666

WEB: www.faysharpe.com

ALAN C. BRANDT
MATTHEW P. DUGAN
PATRICK D. FLOYD
COLLEEN FLYNN GOSS
KARL W. HAUBER
ERIC M. HIGHMAN
ERIK J. OVERBERGER
SUE ELLEN PHILLIPS
ROBERT A. SIDOTI
SCOTT M. SLABY
JOSEPH E. WATERS
JONATHAN A. WITHROW
JEFFREY N. ZAHN
MARINA V. ZALEVSKY

JOHN S. ZANGHI

REGISTERED PATENT AGENTS
KEVIN M. DUNN
ROBERT M. SIEG, PH.D.
THOMAS TILLANDER
ALEX P. TSAROUHAS
GUOSHENG WANG, PH.D.

ALBERT P. SHARPE, III
1959-2001

February 18, 2005

Patrick R. Roche
proche@faysharpe.com

Raymond P. Niro, Jr., Esq.
Niro, Scavone, Haller & Niro
181 West Madison Street
Suite 4600
Chicago, Illinois 60602-4515

Re:    Black & Decker U.S. Patent No. 5,388,303
       Our Reference:  RYLZ 3 01103

Dear Ray:

I am sorry for the delay in getting back to you.  Royal is reluctant to supply the requested past sales information until it is convinced it is relevant.  We need some information from you evidencing that B&D complied with the proper notice provisions regarding patent marking on the COLLECTOR product.  Royal has finally been able to obtain a sample of the product and it lacks a marking of the patent number.  Please provide us with appropriate evidence of those COLLECTOR products that were sold after the patent issued having the required patent number marking.

We know the COLLECTOR had a relatively brief product life and believe a substantial portion of this life existed after the patent issued, and so we will also require your assurances that most of the products sold after the patent issue date included the patent number marking.

As this is not confidential information to B&D, we do not appreciate why this request should be treated by you as requiring a corresponding exchange of Royal confidential information.

Raymond P. Niro, Jr., Esq.
February 18, 2005
Page 2

      We look forward to hearing from you at your convenience.

                Very truly yours,

                FAY, SHARPE, FAGAN,
                MINNICH & McKEE, LLP

                Patrick R. Roche

PRR:ct
cc:    Royal Appliance Mfg. Co.

N:\RYLZ\301103\CNT0001748V001.doc

Exhibit 4

## Mallin, Robert

**From:**  Swierk, Susan L [swierk@nshn.com]

**Sent:**  Wednesday, March 26, 2008 11:52 AM

**To:**  Mallin, Robert

**Subject:** Black & Decker/Royal

Robert Mallin
Brinks, Hofer, Gilson & Lione

In follow-up to my voice message of earlier today, please provide us with an identification of the prior art which you believe invalidates the Black & Decker '303 patent, and that you are relying upon to support your request for reexamination.  This information will not only help us evaluate your client's settlement proposal, but also to make a determination on whether Black & Decker will oppose your suggested stay of the litigation.

Thanks for your cooperation.

Raymond


**Sent on Behalf of Raymond P. Niro, Jr.**
by Susan Swierk, legal assistant
NIRO, SCAVONE, HALLER & NIRO
181 West Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax:  (312) 236-3137

Exhibit 5

**Robert S. Mallin**
312-321-4221
rmallin@usebrinks.com

**BRINKS**

**HOFER**

**GILSON**

**&LIONE**
®
A Professional Corporation

Intellectual Property
Law Worldwide

*Via Facsimile Transmission to 312-236-3137*

March 26, 2008

Raymond P. Niro, Jr., Esq.
Niro, Scavone, Haller & Niro, Ltd.
181 West Madison Street
Suite 4600
Chicago, IL 60602-4515

Re:    **Black & Decker, Inc., and Black & Decker (U.S.), Inc. v.**
       **Royal Appliance Mfg. Co., d/b/a TTi Floor Care North America and**
       **Techtronic Industries Co., Ltd.**
       **Northern District of Illinois**
       **Case No. 1:08-cv-00590**

Dear Raymond:

I have relayed your request for us to provide you with the prior art that invalidates the '303 patent so that your client can evaluate it in response to our counteroffer and as part of its determination whether Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "B&D") will oppose a stay. Before we produce the references, we request the following:

     1.     An agreement from B&D that it (and all entities associated with B&D) will not file a request for reexamination of the '303 patent or any other PTO proceeding or cause any other party to file a request for reexamination of the '303 patent or any other PTO proceeding based on that prior art until after Royal has filed a request for reexamination.

     2.     B&D agree to a 21 day extension for Royal and TTI to answer or otherwise plead.

     3.     B&D agree to advise Royal at least 7 days before the answer is due whether it will oppose a stay pending the outcome of a request for reexamination that Royal intends to file.

Please let me know if this is acceptable to B&D.

Best regards,

Robert S. Mallin

RSM:jms

Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLACK & DECKER INC. and BLACK & DECKER (U.S.) INC., | Civil Action No. 08 cv 590 |
| Plaintiffs, | Judge Manning<br>Magistrate Judge Keys |
| v. | |
| ROYAL APPLIANCE MFG. CO., d/b/a TTI FLOOR CARE NORTH AMERICA, and TECHTRONIC INDUSTRIES CO. LTD., | |
| Defendants. | |

## JOINT STATUS REPORT

Pursuant to the Court's Instructions for Initial Status Report, Plaintiffs Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker") and Defendants Royal Appliance Mfg. Co., d/b/a TTI Floor Care North America ("Royal"), and Techtronic Industries Co. Ltd. ("TTI") (collectively "Defendants") submit the following Joint Status Report.

### A.    Nature of the Case

1.    a.    Black & Decker asserts a claim for infringement of its U.S. Patent No. 5,388,303, which arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original jurisdiction over the subject matter of this claim under 28 U.S.C. § 1338(a). The Court has personal jurisdiction over each of the Defendants.

b.    Royal and TTI denied infringement and asserted affirmative defenses of noninfringement; patent invalidity; patent unenforceability due to inequitable conduct; laches; equitable estoppel; a limitation to any claim of damages based on the time limitation for damages under 35 U.S.C. § 286; and a limitation to any claim of damages for failing to comply with the

provisions of 35 U.S.C. § 287.  Royal has asserted counterclaims for noninfringement, invalidity and unenforceability.

2.      a.      Black & Decker seeks damages, pursuant to 35 U.S.C. § 284, adequate to compensate for Royal's infringement of the '303 patent, but in no event less than a reasonable royalty.  Black & Decker may claim additional damages (such as price erosion, if warranted after the taking of discovery on the issue).  Black & Decker also seeks prejudgment interest, increased damages and attorneys' fees under 35 U.S.C. §§ 284 and 285, as well as injunctive relief.  Black & Decker is unable to calculate the precise amount of actual damages at this time since it has not received discovery pertaining to sales, profits, marketing and financial information for the infringing products and related products.

     b.      Royal and TTI seek attorneys fees and costs under 35 U.S.C. §§ 284 and 285.

3.      Royal and TTI have both appeared and filed Answers to the Complaint.

4.      The major legal issues in this patent case include claim construction and Royal's defenses of invalidity, unenforceability, laches and equitable estoppel.

5.      The major factual issues in this patent case include infringement, factual underpinnings for the determination of invalidity and enforceability, laches, equitable estoppel, damages and willfulness.

6.      Citations to key authorities which will assist the Court in understanding and ruling on the issues will be presented through appropriate motion practice as the issues are crystallized during discovery.  However, Royal and TTI contend that one important case relating to the standard for establishment on nonobviousness is the recent Supreme Court ruling:  *KSR Int'l Co. v. Teleflex Inc.,* 127 S. Ct. 1727 (2007).

**B.     Draft Scheduling Order**

**The Pending Motion to Stay**

On April 7, 2008, Royal and TTI filed their Motion to Stay Pending the Outcome of the Request for Reexamination of U.S. Patent No. 5,388,303.  At the present time, Black & Decker opposes the stay of discovery sought by Defendants Royal and TTI.

**Plaintiffs' Proposal for Scheduling**

Plaintiffs propose the following schedule:

1.     The parties will exchange by April 25, 2008 the information required by Rule 26(a)(1), Fed.R.Civ.P.

2.     Last day to join additional parties and amend the pleadings:  July 31, 2008.

3.     Fact discovery commenced in time to be completed by December 15, 2008.

4.     Expert discovery commenced in time to be completed by March 31, 2009.

5.     Reports from retained experts under Rule 26(a)(2):

    a.     Initial reports from party bearing burden of proof on an issue due January 15, 2009;

    b.     Rebuttal expert reports due February 16, 2009; and

6.     All dispositive or partially dispositive motions to be filed by April 30, 2009.

**Defendants' Proposal for Scheduling and Claim Construction**

If the Court denies Royal's and TTI's motion to stay, then Defendants propose the following schedule:

1.     Thirty days after the Court's decision on Royal's and TTI's motion to stay, the parties will exchange the information required by Rule 26(a)(1), Fed.R.Civ.P.

2.     Last day to join additional parties and amend the pleadings:  four months after the

Court's decision on Royal's and TTI's motion to stay.

3.      Fact discovery commenced in time to be completed:  eleven months after the Court's decision on Royal's and TTI's motion to stay.

4.      Expert discovery commenced in time to be completed: fifteen months after the Court's decision on Royal's and TTI's motion to stay.

5.      Reports from retained experts under Rule 26(a)(2):

        a.      Initial reports from party bearing burden of proof on an issue due twelve months after the Court's decision on Royal's and TTI's motion to stay.

        b.      Rebuttal expert reports due thirteen months after the Court's decision on Royal's and TTI's motion to stay.

6.      All dispositive or partially dispositive motions to be filed: no later than sixteen months after the Court's decision on Royal's and TTI's motion to stay.

## Royal and TTI also submit the following Claim Construction Procedure

Royal and TTI submit that an orderly procedure for claim construction is needed including an identification of disputed terms, proposed claim constructions, and a claim construction hearing.

Royal and TTI submit that the parties adopt rules similar to the procedures used for patent cases in other courts, such as the Northern District of California, Western District of Pennsylvania, or Eastern District of Texas.  Such a procedure would require Plaintiffs to disclose the asserted claims with their infringement contentions.  The Defendants would then disclose their invalidity contentions.  Next, the parties are to simultaneously exchange a list of claim limitations, terms, phrases, or clauses which each party contends should be construed by the Court, and exchange thereafter a preliminary proposed claim construction for each term, phrase,

or clause identified in the list. The parties would then see if they could agree to the interpretation of some or all of the disputed limitations, terms, phrases or clauses. The parties would then provide a joint claim construction statement to the Court, containing each disputed term.

Before the claim construction hearing, the parties would simultaneously file opening claim construction briefs and then simultaneously submit responsive claim construction briefs. The parties are to then jointly submit a claim construction chart identifying the terms in dispute, their proposed interpretations and the support for the terms in advance of the claim construction hearing.

Should the Court deny Plaintiffs' motion to stay, within 30 days thereafter, Royal and TTI submit that the parties shall confer and propose a joint scheduling order containing proposed dates for the claim construction procedure preferred by this Court.

**Other Provisions**

7.    The parties defer to the Court for the scheduling of the pretrial conference and trial.

8.    The limitations of the Federal Rules of Civil Procedure shall govern depositions, interrogatories and all other discovery, absent further agreement of the parties or leave of Court. Defendants contend that the number of fact depositions should be increased to 15 per side.

9.    The parties are negotiating a proposed Protective Order for confidential information. Once finalized, the proposed Protective Order will be filed with the Court for approval.

10.    The parties will exchange electronic discovery proposals and work towards mutually agreeable terms to govern the discovery of electronic documents.

### C.     Trial Status

1.     A jury trial has been requested.

2.     Black & Decker anticipates 5 court days for the completion of the jury trial. Royal and TTI anticipate that the jury trial will take 7 court days and that the bench trial for inequitable conduct will take an additional 2 days.

### D.     Consent to Proceed Before a Magistrate Judge

The parties are considering whether or not they will consent to proceed before a Magistrate Judge for all proceedings including trial.

### E.     Settlement Status

1.     The parties have engaged in settlement discussions, but have determined that settlement is not feasible at this time.

2.     At this time, the parties do not believe it would be productive to hold a settlement conference with Judge Manning or a magistrate judge.

Respectfully submitted,

_____          _____
Raymond P. Niro, Jr.                 Gary M. Ropski
Paul C. Gibbons                      Robert S. Mallin
Robert A. Conley                     Manish K. Mehta
Laura A. Kenneally                   BRINKS, HOFER, GILSON & LIONE
NIRO, SCAVONE, HALLER & NIRO         NBC Tower, Suite 3600
181 West Madison, Suite 4600         455 North Cityfront Plaza Drive
Chicago, Illinois 60602 4515         Chicago, IL 60611-5599
Phone: (312) 236 0733                Phone:  (312) 321-4200
Fax: (312) 236 3137                  Fax:  (312) 321-4299
rnirojr@nshn.com; gibbons@nshn.com   gropski@usebrinks.com
conley@nshn.com; lkenneally@nshn.com rmallin@usebrinks.com
                                     mmehta@usebrinks.com

Attorneys for Black & Decker Inc. and Black   Attorneys for Royal Appliance Mfg. Co., d/b/a
& Decker (U.S.) Inc.                           TTI Floor Care North America, and Techtronic
                                               Industries Co. Ltd.

Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLACK & DECKER INC. and BLACK & DECKER (U.S.) INC., | Civil Action No. 08 cv 590 |
| Plaintiffs, | Judge Manning<br>Magistrate Judge Keys |
| v. | |
| ROYAL APPLIANCE MFG. CO., d/b/a TTI FLOOR CARE NORTH AMERICA, and TECHTRONIC INDUSTRIES CO. LTD., | |
| Defendants. | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

Plaintiffs, Black & Decker, Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker") propound the following interrogatories to be answered separately and under oath by an officer or agent of defendants, Royal Appliance Mfg. Co., d/b/a/ TTI Floor Care North America and Techtronic Industries Co. Ltd. (collectively "Royal") within thirty days after service, in accordance with the provisions of Rule 33, Fed.R.Civ.P. These interrogatories shall be deemed continuing so as to require the requested information as of the date of service of each of the Royal's answers thereto and also as to require prompt supplementation whenever the conditions of Federal Rule of Civil Procedure 26(e) are met.

### Definitions

1.      The terms "Defendant," "you," and "your" shall mean each of the named defendants in this action, separately, i.e., Royal Appliance Mfg. Co. individually and d/b/a/ TTI and Techtronic Industries Co. Ltd., and any of its predecessors, parents, subsidiaries, divisions, related companies and other business entities controlled by each defendant, as well as their

agents, owners, employees, beneficiaries, representatives and attorneys, and each person acting or purporting to act on its behalf or under its control.

2.      "Document(s)," as used herein, refers to the broadest definition of document under the Federal Rules, e.g., anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation every original (and every copy of any original or copy which differs in any way from any original because of notations thereon or attachments thereto or otherwise) of every writing or recording of every kind of description, whether handwritten, typed, drawn, printed or recorded by any physical, mechanical, electronic or electrical means, including electronic data compilations.

3.      "Thing(s)" means any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

4.      "Electronic data compilations" means information stored in computer memory, magnetic tapes, discs or any other computer data storage area from which such information can be read and be translated to usable form with the use of detection devices.

5.      To "identify" or "locate" documents and things means to provide a brief description of each document or thing sufficient to support a request for production, including at least the type of document or thing, date, identification of the author, as well as identification of each person who presently has custody of the document or thing and of any copy thereof.

6.      The terms "person" or "persons" refers to both natural persons and to corporate, governmental or other business entities and the acts of a person are defined to include the acts of directors, officers, owners, members, employees, agents or attorneys acting on the person's behalf.

7.    To "identify" a person means to state the person's name and business address and telephone number and, additionally, in the case of a natural person, his or her home address, employer, present occupation, job title and telephone number.

8.    The term "prior art" includes by way of example and without limitation, the subject matter described in 35 U.S.C. § 103 and in each subdivision of 35 U.S.C. § 102.

9.    The terms "and," "or" as well as "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

10.    The term "relevant" means documents and other information which are relevant in the sense of Fed.R.Civ.P. 26 or Fed.R.Evid. 401-02; or which a Defendant intends to use to support its allegations or defenses; or which tend to prove or disprove any allegations or defenses of Plaintiffs.

11.    The terms "relate to," "relating to" or "related to" mean relevant to, referring to, alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing and/or constituting.

12.    The terms "infringe," "infringes," or "infringed" refers to any form of infringement actionable under United States law, including without limitation, direct infringement, contributory infringement and inducement to infringe.

13.    The terms "patent in suit" and "the "'303 Patent" mean United States Patent No. 5,388,303, entitled "Vacuum Cleaner With Extendable Hose And Brush Disengagement," issued on February 14, 1995.

14.    The term "Accused Products" means the vacuum products accused of infringement in Black & Decker's Complaint, including but not limited to the Dirt Devil® brand

3

Platinum Force® (Model Nos. M08240 and M08240HD) and Power Reach® (Model Nos. M08245 and M08245X) hand-held vacuum products, and any other product has insubstantial differences and/or which comes within the scope of the claims of the patent in suit.

### Interrogatories

1.    With respect to any affirmative defenses and/or counterclaims alleging that any of the claims of the patent in suit are invalid for any reason:

a.    Identify specifically each item of prior art known to and/or relied upon by Defendant in asserting invalidity of each claim of the patent in suit, identify the specific statutory basis for each item, and make an element-by-element application of each item of prior art for each asserted claim of the patent in suit using drawings or illustrations from the patent in suit and/or the prior art;

b.    State and describe in detail the complete factual basis for any contention that any asserted claim of the patent in suit is invalid under 35 U.S.C. § 102 and/or § 103, including specifically, Defendant's contention of the level of skill in the art, the differences between each item of prior art and each asserted claim, the scope and content of the prior art, and the application of the Supreme Court <u>KSR</u> standard to Defendant's invalidity position;

c.    Identify each asserted claim of the patent in suit that is allegedly invalid under 35 U.S.C. § 112, explain the factual basis for each such contention, and identify the specific section and statutory requirement of 35 U.S.C. § 112 that has allegedly not been met;

d.    Identify the person(s) most knowledgeable about the response to this interrogatory, and locate and identify all documents which refer or relate to the facts and

4

assertions in the response or which were reviewed in preparing the response to this interrogatory.

2.      State Defendant's construction, interpretation and contended scope of each and every claim element of each asserted claim of the patent in suit; and, identify the person(s) most knowledgeable about the response to this interrogatory, and locate and identify all documents which refer or relate to the facts and assertions in the response or which were reviewed in preparing the response to this interrogatory.

3.      State and describe in detail the complete factual basis for Defendant's contention that it has not directly infringed, contributed to the infringement of, or actively induced infringement of any one or all of the claims of the patent in suit, including, but not limited to, an element-by-element analysis explaining and illustrating why any element of each claim in the patent in suit is not present in each of the Accused Products, both literally and under the doctrine of equivalents; and, identify the person(s) most knowledgeable about the response to this interrogatory, and locate and identify all documents which refer or relate to the facts and assertions in the response or which were reviewed in preparing the response to this interrogatory.

4.      State the unit and dollar volume of Accused Products manufactured or sold in the United States, as well as the gross and net profits (including incremental gross margins), realized by Defendant on the manufacture and sale of Accused Products in the United States since inception, categorized by year and month and by product type and name; and, identify the person(s) most knowledgeable about the response to this interrogatory, and locate and identify all documents which refer or relate to the facts and assertions in the response or which were reviewed in preparing the response to this interrogatory.

5

5.    State and describe in detail the complete factual basis for Defendant's contention that its infringement has not been willful, including whether Defendant received any legal advice or opinions pertaining to the infringement, validity and/or enforceability of the claims of the patent in suit and, if so, identify and describe in detail:

a.    The date and circumstances upon which Defendant obtained such legal advice or opinions;

b.    A full and complete description of each oral or written advice or opinion;

c.    Identify the person(s) most knowledgeable about the response to this interrogatory, and locate and identify all documents which refer or relate to the facts and assertions in the response or which were reviewed in preparing the response to this interrogatory.

6.    With respect to the patent in suit, and assuming a finding of infringement, state the specific "reasonable royalty" rate that would have been negotiated between Black & Decker and Defendant in a "hypothetical negotiation"; describe in detail the basis for the answer to this interrogatory, including all Georgia Pacific factors Defendant contends are relevant, or would be relevant, to the determination of a reasonable royalty rate; state with particularity the effect each such factor would have on such hypothetical negotiations; and, identify the person(s) most knowledgeable about the response to this interrogatory, and locate and identify all documents which refer or relate to the facts and assertions in the response or which were reviewed in preparing the response to this interrogatory.

7.    Identify by trade name, product name, product number or other suitable designation all Accused Products manufactured, used, sold, offered for sale, licensed and/or imported by or for Defendant; and, identify the person(s) most knowledgeable about the response

to this interrogatory, and locate and identify all documents which refer or relate to the facts and assertions in the response or which were reviewed in preparing the response to this interrogatory.

8.    Describe chronologically the design, development and method of manufacture of the Accused Products, including the specific date the accused products were conceived, designed, developed, reduced to practice and introduced, and all facts supporting the same; whether or not Defendant was aware of the patent in suit either before or during the design of the accused products; any efforts made to avoid infringement of the patent in suit; and, identify the person(s) most knowledgeable about the response to this interrogatory, and locate and identify all documents which refer or relate to the facts and assertions in the response or which were reviewed in preparing the response to this interrogatory.

9.    State with particularity the factual bases supporting any allegation, defense, claim or counterclaim that the '303 Patent was procured through inequitable conduct and is therefore unenforceable.    A full and complete response to this interrogatory will include all facts supporting Defendant's contention of inequitable conduct and the identification of the individual(s) most knowledgeable about the factual bases for Defendant's inequitable conduct claims along with the identification of all supporting documents.

7

Respectfully submitted,

Raymond P. Niro, Jr.
Paul C. Gibbons
Robert A. Conley
Laura A. Kenneally
NIRO, SCAVONE, HALLER & NIRO
181 West Madison, Suite 4600
Chicago, Illinois 60602 4515
Phone: (312) 236 0733
Fax: (312) 236 3137
rnirojr@nshn.com; gibbons@nshn.com
conley@nshn.com; lkenneally@nshn.com

Attorneys for Black & Decker Inc. and Black &
Decker (U.S.) Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2008, I caused the foregoing **PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS** to be served via hand delivery to the below listed counsel:

Gary M. Ropski
Robert S. Mallin
Manish K. Mehta
BRINKS, HOFER, GILSON & LIONE
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL 60611-5599
Phone: (312) 321-4200
Fax: (312) 321-4299
gropski@usebrinks.com
rmallin@usebrinks.com
mmehta@usebrinks.com

Attorney for Black & Decker

Exhibit 8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLACK & DECKER INC. and BLACK & DECKER (U.S.) INC.,<br><br>        Plaintiffs,<br><br>  v.<br><br>ROYAL APPLIANCE MFG. CO., d/b/a TTI FLOOR CARE NORTH AMERICA, and TECHTRONIC INDUSTRIES CO. LTD.,<br><br>        Defendants. | Civil Action No. 08 cv 590<br><br>Judge Manning<br>Magistrate Judge Keys |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS

  Plaintiffs, Black & Decker, Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker") requests that defendants, Royal Appliance Mfg. Co., d/b/a/ TTI Floor Care North America and Techtronic Industries Co. Ltd. (collectively "Royal") produce the documents and things described in the following requests for production within thirty days of service, as ·required by Federal Rule of Civil Procedure 34.

  Black & Decker will examine the documents at the offices of his counsel, or where the documents are maintained by Royal, or at any other mutually agreeable location where suitable examination and photocopying facilities exist or can be arranged.  By accepting photocopies, Black & Decker is not waiving his right to examine originals where necessary.

  Where Royal withholds documents for reasons of attorney-client privilege, work-product immunity or the like, Black & Decker requests that he be served with a list of such documents prepared in accordance with applicable case law, including at least the names and titles or functions of the authors; any recipients; the date; the basis for withholding; and a description of

the document and its subject matter sufficient to allow Black & Decker to contest the claim. Black & Decker will accept confidential documents under a suitable protective order.

These requests for production shall be deemed continuing so as to require the requested information as of the date of service of Royal's answers thereto and also as to require prompt supplementation whenever the conditions of Federal Rule of Civil Procedure 26(e) are met.

## Definitions

1.    The terms "Defendant," "you," and "your" shall mean each of the named defendants in this action, separately, i.e., Royal Appliance Mfg. Co. individually and d/b/a/ TTI and Techtronic Industries Co. Ltd., and any of its predecessors, parents, subsidiaries, divisions, related companies and other business entities controlled by each defendant, as well as their agents, owners, employees, beneficiaries, representatives and attorneys, and each person acting or purporting to act on its behalf or under its control.

2.    "Document(s)," as used herein, refers to the broadest definition of document under the Federal Rules, e.g., anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation every original (and every copy of any original or copy which differs in any way from any original because of notations thereon or attachments thereto or otherwise) of every writing or recording of every kind of description, whether handwritten, typed, drawn, printed or recorded by any physical, mechanical, electronic or electrical means, including electronic data compilations.

3.    "Thing(s)" means any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

2

4.    "Electronic data compilations" means information stored in computer memory, magnetic tapes, discs or any other computer data storage area from which such information can be read and be translated to usable form with the use of detection devices.

5.    To "identify" or "locate" documents and things means to provide a brief description of each document or thing sufficient to support a request for production, including at least the type of document or thing, date, identification of the author, as well as identification of each person who presently has custody of the document or thing and of any copy thereof.

6.    The terms "person" or "persons" refers to both natural persons and to corporate, governmental or other business entities and the acts of a person are defined to include the acts of directors, officers, owners, members, employees, agents or attorneys acting on the person's behalf.

7.    To "identify" a person means to state the person's name and business address and telephone number and, additionally, in the case of a natural person, his or her home address, employer, present occupation, job title and telephone number.

8.    The term "prior art" includes by way of example and without limitation, the subject matter described in 35 U.S.C. § 103 and in each subdivision of 35 U.S.C. § 102.

9.    The terms "and," "or" as well as "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

10.    The term "relevant" means documents and other information which are relevant in the sense of Fed.R.Civ.P. 26 or Fed.R.Evid. 401-02; or which a Defendant intends to use to support its allegations or defenses; or which tend to prove or disprove any allegations or defenses of Plaintiffs.

11.    The terms "relate to," "relating to" or "related to" mean relevant to, referring to, alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing and/or constituting.

12.    The terms "infringe," "infringes," or "infringed" refers to any form of infringement actionable under United States law, including without limitation, direct infringement, contributory infringement and inducement to infringe.

13.    The terms "patent in suit" and "the "'303 Patent" mean United States Patent No. 5,388,303, entitled "Vacuum Cleaner With Extendable Hose And Brush Disengagement," issued on February 14, 1995.

14.    The term "Accused Products" means the vacuum products accused of infringement in Black & Decker's Complaint, including but not limited to the Dirt Devil® brand Platinum Force® (Model Nos. M08240 and M08240HD) and Power Reach® (Model Nos. M08245 and M08245X) hand-held vacuum products, and any other product has insubstantial differences and/or which comes within the scope of the claims of the patent in suit.

### Instructions

a.    All responsive documents stored in machine readable form shall be produced in both machine readable form and hard copy form with the generation date, the printout date, file name and file location appearing on the hard copy.

b.    Documents that originate in any of the following formats or other formats that contain links to other files or materials, that contain internal cross references, or that cannot be effectively printed on 8-1/2 x 11 inch-sized paper, shall be produced in electronic format locked as necessary to render them "read only":  web pages, html files, xls files, ppt files, jpeg files, interactive web-based tutorials, video files and formats (including mp3, Windows Media Player,

Quick Time and Real Player files), audio files and formats (including mp3, Windows Media Player and Real Player files, pdf files and Visio files.

c.    If any Defendant produces photocopies of any laboratory notebooks, it shall maintain the original materials in a location for physical inspection at a mutually determined time and place.

## Requests for Production

Black & Decker requests production of any and all documents and things relating to:

1.    All documents to be identified in Defendant's responses to Plaintiffs' First Set of Interrogatories, all documents consulted in the formulation of Defendant's responses thereto and all documents relating to the subject matter of Plaintiffs' First Set of Interrogatories.

2.    Documents sufficient to show Defendant's past and present organizational and operational structure, and the identity of its officers and managers, from 2002 to the present.

3.    Documents sufficient to show Defendant's document retention and/or destruction policies or practices from 2002 to the present, including but not limited to any policies concerning the retention or destruction of email or voice mail messages.

4.    Documents· sufficient to show all the trade names, product names, product numbers and/or other designations used in connection with the Accused Products.

5.    All documents relating to the infringement and/or validity of the claims of the patent in suit.

6.    All documents that support Defendant's contentions of invalidity, unenforceability and/or noninfringement of any of the claims of the patent in suit.

7.    Documents and things Defendant contends are prior art to the patent in suit, including without limitation all prior art upon which Defendant may rely to show obviousness or which is relevant to the nonobviousness of the claims of the patent in suit; and documents

sufficient to show the structure, function or operation of any product in public use or on sale in the United States which Defendant asserts to be prior art to the claims of the patent in suit.

8.     All documents relating to the interpretation, scope and meaning of the claims of the patent in suit.

9.     All documents relating to any validity or patentability prior art search or investigation reports relied upon, reviewed, generated, performed, commissioned, ordered, requested, received, contracted or purchased by or for Defendant in reference to the patent in suit.

10.     Any studies, analyses, consideration, discussion or communication relating to the patent in suit, including without limitation any communications between Defendant and its attorneys relating to the patent in suit, and all documents relating to such studies, analyses, consideration, discussion or communication.  To the extent Defendant intends to assert good faith reliance on advice of counsel as a defense, Black & Decker specifically requests the production of any documents containing or relating to legal opinions regarding the patent in suit and Defendant's right to manufacture, use and/or sell the Accused Products, including any legal opinions of invalidity and/or noninfringement of the patent in suit.

11.     All documents that support any defense Defendant may assert to rebut the charge of willful infringement.

12.     All documents relating to the features, advantages and/or benefits of the inventions described and claimed in the patent in suit.

13.     All documents relating to praise, criticism or commentary on or about the Accused Products, including without limitation articles, press releases, advertisements, books and/or correspondence, statements or other testimonials by Defendant's representatives,

6

distributors and/or customers or potential customers regarding the benefits or disadvantages of the Accused Products.

14.     All documents relating to communications with third parties, including actual or potential users of Accused Products, concerning Black & Decker, the patent in suit or this lawsuit.

15.     Documents sufficient to show the types, versions and models of the Accused Products since their introduction, including their construction and manufacture.

16.     All documents relating to the structure, function and operating characteristics of the Accused Products, and methods of manufacture of the Accused Products, including without limitation photographs, films, design schematics, fabric or material swatches, part lists, warranties, instruction manuals and customer service/assistance manuals and guidelines.

17.     A physical sample of each model of the Accused Products.

18.     All documents relating to sales, marketing and promotional materials for each accused product (and components thereof), including without limitation television and print media advertising; brochures and trade show promotional material; press releases; catalogues; price lists, sell sheets, product descriptions, sales literature and the like.

19.     All documents constituting or relating to any patent or patent applications (United States or foreign) issued to, assigned to or filed by Defendant or on Defendant's behalf that relate to any of the Accused Products (or components thereof).

20.     All documents that refer or relate to marketing and promotion of the patent and patent applications identified in paragraph 19 above, and all attempts to license or enforce said patent.

21.    All documents relating to the design and development sequence and chronology for each accused product (or component thereof), including without limitation conception documents, engineering reports, strategic plans, business plans, business strategy reports, focus groups, market research, boards of directors minutes, correspondence or development time lines.

22.    All documents relating to Defendant's policies and/or practices for new product research and development for the last six years, including without limitation policies and/or practices for requesting funding.

23.    All documents relating to any requests for funding for the Accused Products.

24.    All documents relating to Defendant's expenses for researching and developing the Accused Products.

25.    Documents sufficient to identify all persons involved with or responsible for the conception, design, development, approval and manufacturing of the Accused Products.

26.    All samples, prototypes and/or drawings which were considered during the development of the Accused Products and all documents relating thereto.

27.    All documents and things consulted, considered, reviewed or relied upon by Defendant during the development of the Accused Products:

28.    All documents relating to any tests performed on any accused product, including but not limited to documents sufficient to identify the protocol used for any test and persons having knowledge of and/or participating in such tests.

29.    All documents relating to any changes, alterations or modifications to each of the Accused Products, including without limitation the reason(s) for each such change, alteration or modification.

8

30.    All documents relating to the method of manufacture of each of the Accused Products.

31.    All documents relating to Defendant's knowledge of the patent in suit, including without limitation the circumstances under which Defendant first learned of the existence of each of the patent in suit or the applications that ultimately issued as the patent in suit.

32.    All documents relating to the date Defendant contends it first received notice of infringement of the patent in suit.

33.    All documents relating to the unit and dollar volume of sales of the Accused Products (or components thereof) in the United States, categorized by year and month and by product type and name.

34.    Documents sufficient to show prices and pricing structure for all of the Accused Products.

35.    All documents relating to the revenues and expenses, respectively, attributed to the manufacture, use, sale, offer for sale, licensing and/or importation of the Accused Products (and components thereof) in the United States, categorized by year and month and by product type and name.

36.    Documents sufficient to show the gross and net profits (including incremental gross margins) attributed to the manufacture, use, sale, licensing and/or importation of Accused Products (or components thereof) in the United States, categorized by year and month and by product type and name.

37.    Documents sufficient to show and relating to the relative level of Defendant's gross profits for all of its products sold during the past three years; also all documents sufficient

to permit Defendant's gross profits for all of its products to be compared to the profitability of the Accused Products.

38.    Annual financial reports of Defendant since 2002.

39.    All documents relating to the market for handheld vacuum products from 1998 to the present, including but not limited to market share data and consumer surveys.

40.    All documents which Defendant contends are relevant to the determination of a reasonable royalty in a hypothetical negotiation between Black & Decker and Defendant for the licensing of the patent in suit, including what would constitute a reasonable royalty rate and the royalty base.

41.    All documents relating to any license, indemnification or other agreement between Defendant and any other party that relate in any way to the Accused Products.

42.    An identification of any other litigation involving Defendant and any Accused Product, including an identification of the documents and things produced in any such litigation and an identification of all counsel involved for each party.

43.    All documents relating to any and all witness statements taken in connection with this litigation.

44.    All documents that support Defendant's defenses and/or counterclaims.

45.    All documents referring or relating to Black & Decker and/or submissions made by Black & Decker to Defendant

46.    All documents referring or relating to the patent in suit.

47.    All documents and things that Defendant has produced or provided to any expert or consultant relating to or concerning this litigation.

48.    All documents and things concerning any handheld vacuum products.

Respectfully submitted,

Raymond P. Niro, Jr.
Paul C. Gibbons
Robert A. Conley
Laura A. Kenneally
NIRO, SCAVONE, HALLER & NIRO
181 West Madison, Suite 4600
Chicago, Illinois 60602 4515
Phone: (312) 236 0733
Fax: (312) 236 3137
rnirojr@nshn.com; gibbons@nshn.com
conley@nshn.com; lkenneally@nshn.com

Attorneys for Black & Decker Inc. and Black &
Decker (U.S.) Inc.

11

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2008, I caused the foregoing **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS** to be served via hand delivery to the below listed counsel:

Gary M. Ropski
Robert S. Mallin
Manish K. Mehta
BRINKS, HOFER, GILSON & LIONE
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL 60611-5599
Phone:  (312) 321-4200
Fax:  (312) 321-4299
gropski@usebrinks.com
rmallin@usebrinks.com
mmehta@usebrinks.com


_____
Attorney for Black & Decker

Exhibit 9

Robert S. Mallin
312·321-4221
rmallin@usebrinks.com

**BRINKS**
**HOFER**
**GILSON**
**&LIONE** ®
A Professional Corporation

Intellectual Property
Law Worldwide

*Via Facsimile Transmission to 312-236-3137*

April 10, 2008

Raymond P. Niro, Jr., Esq.
Niro, Scavone, Haller & Niro, Ltd.
181 West Madison Street
Suite 4600
Chicago, IL 60602-4515

Re:    **Black & Decker, Inc., and Black & Decker (U.S.), Inc. v.**
       **Royal Appliance Mfg. Co., d/b/a TTi Floor Care North America and**
       **Techtronic Industries Co., Ltd.**
       **Northern District of Illinois**
       **Case No. 1:08-cv-00590**

Dear Ray:

This letter follows up on my voicemail to you from earlier this afternoon. As I mentioned, in view of the Court's order setting a briefing schedule on the motion to stay and vacating the status conference, we believe that the discovery requests served on Tuesday, April 8, 2008, should be withdrawn or the time to answer them should be tied to the Court's decision on the motion to stay. Please let me know if you will agree to withdraw them or extend the due date pending the Court's decision on the motion to stay. I would appreciate a response by the close of business today so that we can raise this matter with the Court, if necessary. I am hopeful that we will not need to bring this matter to the Court

Best regards,

Robert S. Mallin

RSM:jms

Raymond P. Niro, Jr., Esq.
April 10, 2008
Page 2


bcc:   Gary M. Ropski, Esq.
       Manish K. Mehta, Esq.

Exhibit 10

**Mehta, Manish**

| | |
|---|---|
| **From:** | Swierk, Susan L [swierk@nshn.com] |
| **Sent:** | Tuesday, April 15, 2008 2:57 PM |
| **To:** | Mallin, Robert |
| **Cc:** | Mehta, Manish; Schumaker, Joan |
| **Subject:** | RE: B&D/Royal |

Robert –

As we previously indicated to you, it is our belief that the parties should at least exchange initial discovery responses and documents irrespective of the pending motion to stay. At a minimum, this will insure that all of the asserted prior art is being submitted to the Patent Office, and will assist in the preservation of evidence. Is it your position that no discovery should be conducted at all? If so, then you can represent that we disagree with your position.

Thanks,
Raymond

> **From:** Mallin, Robert [mailto:rmallin@brinkshofer.com]
> **Sent:** Tuesday, April 15, 2008 12:54 PM
> **To:** Swierk, Susan L; Niro, Raymond P Jr
> **Cc:** Mehta, Manish; Schumaker, Joan
> **Subject:** RE: B&D/Royal
>
> Dear Raymond
>
> Will you be advising us today regarding your position in response to my inquiry from last week?
>
> Thanks
> Robert
>
> Robert S. Mallin
> Intellectual Property Attorney
> **Brinks Hofer Gilson & Lione**
> NBC Tower, Suite 3600
> 455 North Cityfront Plaza Drive
> Chicago, IL 60611-5599
> 312.321.4221 - Direct
> 312.321.4299 - Fax
> rmallin@usebrinks.com
> www.usebrinks.com
>
> **Please Note:** This message is intended for the individual or entity named above and may constitute a pri
> and confidential communication. If you are not the intended recipient, please do not read, copy, use, or dis
> this message. Please notify the sender by replying to this message, and then delete the message from yo
> system. Thank you.
>
> **From:** Swierk, Susan L [mailto:swierk@nshn.com]

**Sent:** Friday, April 11, 2008 10:58 AM
**To:** Mallin, Robert
**Cc:** Mehta, Manish
**Subject:** B&D/Royal

Robert –

I received your letter of yesterday and your voice message today.  Realistically, I will not be able to get back to you until Monday or Tuesday next week.  Thanks for your understanding.

Raymond

Exhibit 11

1   J. Christopher Jaczko (149317)
    Allison H. Goddard (211098)
2   JACZKO GODDARD LLP
    4401 Eastgate Mall
3   San Diego, California 92121
    Phone: (858) 550-6150
4   Fax: (858) 225-3500

5   Attorneys for the Black & Decker Defendants

6   Kenneth S. Klein (129172)
    FOLEY & LARDNER LLP
7   402 West Broadway, Suite 2100
    San Diego, California 92101
8   Phone: (619) 234-6655
    Fax: (619) 234-3510

9
    Attorneys for Phillips Plastics Corporation
10  and Hi-Tech Plastics, Inc.

11              **IN THE UNITED STATES DISTRICT COURT**

12          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 13  JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND | Case No. 06cv1572 BTM (CAB) |
| 14  DEVELOPMENT TRUST, | **REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION TO** |
| 15                Plaintiff, | **STAY THE LITIGATION PENDING THE OUTCOME OF** |
| 16        v. | **REEXAMINATION PROCEEDINGS** |
| 17  THE BLACK & DECKER CORPORATION, BLACK & DECKER INC., BLACK & | **Date:  August 31, 2007** |
| 18  DECKER (U.S.) INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, | **Time:  11:00 a.m.** |
|     | **Courtroom 15, Fifth Floor** |
| 19  INC., PHILLIPS PLASTICS CORPORATION, HI-TECH PLASTICS INC. | **Hon. Barry Ted Moskowitz** |
| 20  and B&D HOLDINGS LLC, | NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |
| 21                Defendants. | |

22

23

24

## I.    INTRODUCTION

In opposition to Defendants' motion to stay, Plaintiff primarily contends that (1) Plaintiff would be prejudiced by a stay, and (2) the litigation has progressed too far for a stay to be warranted.  Neither of Plaintiff's contentions is supported by fact or law.  Moreover, Plaintiff disregards his 12 year delay in filing suit – a fact which standing alone completely undermines any supposed prejudice to Plaintiff which would result from a stay while the PTO reexamines the patent in suit.  Defendants respectfully request that this Court exercise its broad discretion to enter a stay of these proceedings pending reexamination.

## II.    PLAINTIFF WILL NOT BE PREJUDICED BY A STAY

Plaintiff suggests that "courts have found prejudice to the non-moving party if an infringement action were stayed pending reexamination **on facts similar to those at bar**" (Docket #191 Opp. at 8; emphasis added), further embellishing that stays have been denied "under facts **strikingly similar** to those here" (Id. at 9).  None of the cases cited by Plaintiff are even remotely similar to this action.

For example, Plaintiff's reliance on the *Gladish* and *Jain* cases is misplaced for several reasons.  To begin with, both of these cases involved circumstances in which the **patent holder** – not the defendant – sought a stay of its own action pending completion of reexamination proceedings.  The *Wayne Automation* case (also relied upon by Plaintiff) expressly distinguishes such cases from the instant case:

> *Lofflan* is factually distinguishable from the instant case.  In *Lofflan*, it was the defendants who instituted the reexamination and requested the stay.  Here it is plaintiff who instituted both this litigation and the reexamination and is requesting a stay.

*Wayne Automation Corp. v. R.A. Pearson Co.*, 782 F.Supp. 516, 518 (E.D. Wash. 1991).

1                              Case No. 06cv1572 BTM (CAB)

1    Plaintiff's reliance on *Gladish* and *Jain* also ignores the fact that Plaintiff's '184 patent

2    will soon expire.  In cases where the patent holder seeks a stay (such as the *Gladish* and *Jain*

3    cases), courts are often concerned that with a stay in place, "the defendants would be forced to

4    continue operating not knowing whether their activities will subject them to liability for patent

5    infringement."  See, e.g, *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464

6    F.Supp.2d 481, 485 (D. Md. 2006).  Such a concern is obviously of no matter here due to the

7    imminent expiration of the '184 patent.

8    Plaintiff's reliance on the *Xerox* case is equally misplaced.  In *Xerox*, the defendant's

9    motion for a stay was denied because the defendant waited to request reexamination until the

10    case was "nearly ready for trial" and after the court had already denied its motion for summary

11    judgment of invalidity.  *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 408 (W.D.N.Y. 1999).

12    Plaintiff's suggestion that he would be prejudiced by a stay also side-steps the simple

13    question posed by Defendants in their motion:  How can there be prejudice when the parties

14    have not yet exchanged claim construction briefs; no claim construction hearing has taken

15    place; there is no deadline for dispositive motions; there is no deadline for fact or expert

16    discovery; and, there is no date set for a pretrial conference or for trial?    Under these

17    circumstances, this Court has found a stay to be warranted.  See *Predicate Logic, Inc. v.*

18    *Distributive Software, Inc.*, Case No. 01cv1951, Doc. #126 (S.D. Cal. Nov. 14, 2002) (Docket

19    #179, Exhibit 1).

20    Plaintiff likewise ignores the *Ingro* and *Hewlett-Packard* cases cited by Defendants in

21    their motion (Docket #178-2 B&D Mem. at 6-7; Docket #179, Exhibits 5-6).  These cases fully

22    support the proposition that Plaintiff cannot claim prejudice where it delayed in initiating the

23    present litigation.  There is no challenging the fact that Plaintiff delayed 12 years in bringing

24

2

1    this lawsuit after first placing Black & Decker and Phillips on notice of infringement of the '184

2    patent. Given his delay, Plaintiff can hardly suggest that he would be prejudiced by a stay

3    pending resolution of the PTO's ongoing reexamination of the '184 patent.

4        Since there is no potential for injunctive relief and since Plaintiff is not actually

5    competing with any of the Defendants to sell products, Plaintiff's prejudice claim comes down

6    to one element: delay in final collection of his monetary award of royalties (assuming he wins).

7    During the delay, prejudgment interest would accumulate on any royalties to be awarded,

8    leaving Plaintiff whole despite any delay. That is, Plaintiff's only prejudice is a mere delay

9    without financial loss. *Predicate Logic*, Case No. 01cv1951, Doc. #126 at p.4-5 ("The general

10   prejudice of having to wait for resolution is not a persuasive reason to deny the motion for

11   stay."). Against mere inconvenience to Plaintiff must be weighed the potential savings of

12   millions of dollars in litigation expense to the parties and hundreds of hours of court time if the

13   stay is granted.

14       In the end, Plaintiff's entire section on "prejudice" fails to identify a single fact

15   supporting any claim of harm to Plaintiff that could possibly result from a stay. Given that

16   Plaintiff cannot identify any actual prejudice, Defendants' motion should be granted.

17   **III.    THE STAGE OF THIS CASE FAVORS A STAY**

18       As courts have repeatedly recognized, there is a "liberal policy" in favor of granting

19   motions to stay proceedings pending the outcome of PTO reexamination proceedings.

20   *Predicate Logic*, Case No. 01cv1951, Doc. #126 at p.2; *Nanometrics, Inc. v. Nova Measuring*

21   *Instruments, Ltd.*, 2007 U.S. Dist. LEXIS 18785, *4 (N.D. Cal. Feb. 26, 2007); *Photoflex*

22   *Prods., Inc. v. Circa 3 LLC*, 2006 U.S. Dist. LEXIS 37743, *3 (N.D. Cal. May 24, 2006) (see

23   Docket #179 Exhibits 1-3). This "liberal policy" is particularly true in cases where discovery is

24

3

1   not nearing completion, and no trial date has been set. Despite Plaintiff's attempts to suggest

2   otherwise, that is the precise status of the present case.

3        In arguing that Defendants have "blithely ignored reality," Plaintiff points to a

4   "discovery cut-off with regard to claim construction" and a "trial on equitable issues" (Opp. at

5   16).[1] Plaintiff cannot, however, identify a fact discovery cut-off date for infringement, validity

6   or any other basic issue of liability or damages. Nor can Plaintiff identify a date for a jury trial

7   on these issues. It is these later dates by which the stage of litigation is measured when

8   considering a motion for a stay. Simply put, the close of claim construction discovery does not

9   equate to the close of fact discovery, nor does a *potential* date for a mini-trial on equitable

10  issues equate to a full-blown trial on the issues of infringement, validity, enforceability or

11  damages.

12       Likewise, Plaintiff's entire opposition focuses almost exclusively on Defendant The

13  Black & Decker Corporation, while ignoring the more recently added Defendants, Phillips, Hi-

14  Tech, Vector as well as other Black & Decker entities – each of which has requested a stay of

15  this case. Practically, the only mention of these parties is when Plaintiff concedes that "the

16  newly added Defendants have not yet served Initial Disclosures" (Opp. at 4). And while

17  Plaintiff boasts of the number of discovery requests served on The Black & Decker Corporation,

18  he disregards the massive amount of discovery still remaining.

19       If this case is "far along the road" as Plaintiff contends, then the Court should consider

20  the hundreds of miles of road still ahead. For example, Plaintiff has not yet inspected Vector's

21  _____

22  [1]      In an effort to persuade the Court that "this lawsuit is in advanced stages,"
    Plaintiff misrepresents that "the Court has already resolved four summary judgment motions in
23  this case" (Opp. at 11). This statement is false. The Court continued Plaintiff's motions without
    prejudice as premature, recognizing that the claims of the '184 patent would require construction
24  prior to any meaningful attempt at resolving a substantive motion seeking summary judgment
    on the issue of infringement.

                                         4

1    manufacturing facilities in China, or the manufacturing facilities for the Porter-Cable brand

2    products.  Plaintiff has not taken any depositions of personnel from Phillips, Hi-Tech or the

3    other Black & Decker Defendants on infringement, invalidity or other substantive issues.  No

4    damages discovery has been taken.  No expert reports have been submitted by any party; no

5    third party depositions have been taken; no dispositive motions have been decided on

6    infringement, invalidity, unenforceability or other substantive issues; no motions in limine have

7    been filed or pre-trial materials prepared.  Plaintiff also ignores the various motions still pending

8    before this Court and Magistrate-Judge Bencivengo and the fact that Magistrate-Judge

9    Bencivengo has set bi-weekly discovery conferences that will continue throughout discovery in

10   this action.  All of this can be alleviated through a stay.

11          Finally, the cases relied upon by Plaintiff to support his "far along the road" argument

12   are once again distinguishable.  As previously discussed, *Wayne Automation* is expressly

13   inapposite, since the stay was requested by the plaintiff in that case.  782 F.Supp. at 518.  The

14   same distinguishing circumstances attach to the holding in the *Jain* case.  These cases are also

15   distinguishable from a timing standpoint.  In *Wayne Automation*, discovery was almost

16   completed and a trial date had already been set at the time a stay was requested.  *Id.* at 517.

17   Similarly in *Jain*, discovery had already closed and the court had set a jury trial date.  *Jain*, 2005

18   U.S. Dist. LEXIS 28950, *9 (E.D. Cal. Sept. 27, 2005).  In the instant case, discovery is not

19   nearing completion.  Nor has a date been set for a jury trial relating to the issues of infringement

20   and validity, among others.  Most Defendants won't even provide initial disclosures until

21   August 31, 2007.

22          On the other hand, Defendants relied upon this Courts decision in the *Predicate Logic*

23   case to support their request for a stay of the present case.  Plaintiff's attempt to distinguish

24

1   *Predicate Logic* is unavailing.  In that case, a motion for stay was filed (and subsequently

2   granted) approximately three months prior to the scheduled date for a claim construction

3   hearing.   Case No. 01cv1951, Doc. #126 at p.2 (Docket #179 Exhibit 1).   Although the

4   *Predicate Logic* case was nearly one year old (much like the present case), this Court noted that

5   the "litigation has not proceeded so far that it would be unjust to stay the action." *Id.* at p. 3.

6   Similarly, the present case is not one in which reexamination of the '184 patent was sought on

7   the eve of trial.

8   **IV.     DEFENDANTS HAVE NOT ABUSED THE REEXAMINATION PROCESS**

9          Plaintiff claims that this motion was filed only after Defendants "suffered repeated

10  litigation setbacks" and only after "the tide of the case had turned against Defendants" (Opp. at

11  10, 18).  Not true.  The Black & Decker Corporation's motion for summary judgment based on

12  corporate status was denied **without prejudice** and while its laches motion was denied because

13  the Court found genuine issues of fact, the Court also noted repeatedly that this is a "very strong

14  case of laches" on the merits (Exhibit C).   Plaintiff's motions for summary judgment of

15  infringement were denied as premature.  No claims of the '184 patent have been construed and

16  no potentially case dispositive motions have been decided.  The suggestion that there has been

17  some kind of "turn of the tide" is at best overzealous attorney argument.

18         Similarly, the notion that Defendants intentionally delayed filing their request for a stay

19  is simply false.  Most of the Defendants were only recently added to the case.  In addition,

20  Plaintiff completely fails to address the change in the law established by the Supreme Court less

21  than four months ago on the critical issue of obviousness, *KSR International Co. v. Teleflex Inc.*,

22  127 S. Ct. 1727 (2007), which forms part of the basis for the reexamination request.  There was

23  no delay in filing the reexamination request.

24

6

1    Once again, Plaintiff relies upon the inapposite *Xerox* case, where the motion for a stay

2    was denied because the defendant waited to request reexamination until after the court had

3    already denied its motion for summary judgment of invalidity and a full trial on the merits was

4    imminent. *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 408 (W.D.N.Y. 1999). The *Xerox*

5    court noted that its decision was made "in light of the substantial time and expense already

6    invested in discovery and trial preparation in this action." *Id.* Moreover, the portion of *Xerox*

7    upon which Plaintiff relies cites to the *Freeman* decision – a case in which the issue of "whether

8    or not the Court should stay the litigation **is not before it.**" *Freeman v. Minnesota Mining &*

9    *Manufacturing Co.*, 661 F.Supp. 886, 887 (D. Del. 1987) (emphasis added). Rather, the issue

10   before the *Freeman* court was "whether 3M should be allowed to petition the PTO for

11   reexamination **when the case is close to trial**" *Id.* (emphasis added). Interestingly, 3M never

12   actually moved the court for a stay, so Plaintiff's reliance on *Freeman* is wholly inapposite.

13   **V.    THERE IS A HIGH PROBABILITY THAT THE CLAIMS OF THE '184 PATENT
         WILL BE CANCELEED DURING REEXAMINATION**

14   

15       Plaintiff suggests that "the actual chances of reexamination eliminating all claims

16   asserted in the present case are never higher than 11.33%," and that Defendants' assertion that

17   said probability approaches 75% is based upon "convenient mathematical errors" (Opp. at 16-

18   17). It is Plaintiff, not Defendants, who conveniently disregards the relevant facts that are

     applicable to the PTO's reexamination statistics.

19   

20       Because expiration of the '184 patent is imminent, the reexamination will be "all or

21   nothing" for the Plaintiff. **Plaintiff will not be permitted to make any amendment**

22   **whatsoever to any claim of the '184 patent in response to the PTO's reexamination.** 37

23   C.F.R. § 1.530(j). In the present litigation, Plaintiff has asserted claims 1, 6-8 and 10 of the '184

24   patent. All of these claims are subject to the PTO's pending reexamination. Of these claims,

7

1    only claim 1 is independent, with claims 6-8 and 10 ultimately depending from claim 1. Due to

2    this dependency, any amendment to claim 1 has the practical effect of being an amendment to

3    claims 6-8 and 10 of the '184 patent as well. When Plaintiff's inability to amend any claim of

4    the '184 patent is taken into consideration, the referenced 64% chance that one or more claims

5    of the '184 patent would survive reexamination due to an amendment to the claim(s) is thereby

6    applicable in its entirety. Coupled with the always existent 10% chance that all claims of the

7    '184 patent will be cancelled during the PTO's reexamination thereof, it is accurate to project

8    that a 75% probability exists that no claim of the soon to be expired '184 patent will survive the

9    reexamination process.

10          As a last resort, Plaintiff requests that the Court hold-off entering the stay until the PTO

11    determines whether it will conduct the reexamination, which will occur by statute no later than

12    October 30, 2007. 35 U.S.C. § 303. However, one statistic that is unrefuted is that the PTO

13    grants over 90% of reexamination requests (B&D Mem. at 5; Docket #180 Exhibit B). Given

14    the enormous daily activity in this case, there is no reason to put off the stay for up to two

15    months on the slight chance reexamination will not be granted. The better course is to enter the

16    stay now, and on the remote possibility of denial of the reexamination – statistically less than

17    10% – the parties and the Court can pick-up where they left off on October 31.

18          Aside from these purely statistical probabilities, Defendants discussed in their moving

19    papers how this is a particularly compelling case for reexamination because the strong prior art

20    relied upon was never even considered by the PTO during the initial examination of the '184

21    patent (B&D Mem. at 9; Docket #180 Exhibit A). That Plaintiff chose only to perform an

22    incorrect mathematical calculation, while completely ignoring the actual prior art identified in

23    Defendants' opening brief, speaks volumes about the weakness of Plaintiff's position.

24

8

VI.    **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court exercise its broad discretion and order this case stayed pending completion of the PTO's reexamination of the '184 patent.

Dated:  August 23, 2007                    Respectfully submitted,

_____/s/ Raymond P. Niro, Jr._____          _____/s/ Robert L. Binder_____
Raymond P. Niro, Jr.                                      *Signed with permission*
Dina M. Hayes                                            Robert L. Binder
Gregory P. Casimer                                       FOLEY & LARDNER LLP
Robert A. Conley                                         777 East Wisconsin Avenue
NIRO, SCAVONE, HALLER & NIRO                              Milwaukee, WI 53202
181 West Madison, Suite 4600                             Phone:  (414) 271-2400
Chicago, Illinois 60602-4515                             Fax  (414).297-4900
Phone: (312) 236-0733
Fax: (312) 236-3137                                      Kenneth S. Klein (129172)
                                                         FOLEY & LARDNER LLP
J. Christopher Jaczko (149317)                           402 West Broadway, Suite 2100
Allison H. Goddard (211098)                              San Diego, California 92101
JACZKO GODDARD LLP                                       Phone: (619) 234-6655
4401 Eastgate Mall                                       Fax: (619) 234-3510
San Diego, California 92121
Phone: (858) 550-6150                                    *Attorneys for Defendants Phillips and Hi-*
Fax: (858) 225-3500                                      *Tech*

*Attorneys for the Black & Decker*
*Defendants*

9

1                         **PROOF OF SERVICE**

2         I hereby certify that on August 23, 2007, I caused the foregoing REPLY IN SUPPORT

3 OF DEFENDANTS' JOINT MOTION TO STAY THE LITIGATION PENDING THE

4 OUTCOME OF REEXAMINATION PROCEEDINGS to be electronically filed with the Clerk

5 of the Court using the CM/ECF system which will send notification of such filing to:

6     *Attorneys for Plaintiff*

7     J. Michael Kaler (158296)
    KALER LAW OFFICES

8     9930 Mesa Rim Road, Suite 200
    San Diego, California 92121

9     Phone: (858) 362-3151
    Fax: (858) 824-9073

10     michael@kalerlaw.com

11     Melody A. Kramer (169984)
    KRAMER LAW OFFICE

12     9930 Mesa Rim Road, Suite 1600
    San Diego, California 92121

13     Phone: (858) 362-3150
    Fax: (858) 824-9073

14     mak@kramerlawip.com

15     Patricia Shackelford (218647)
    9930 Mesa Rim Road, Suite 450

16     San Diego, California 92121
    Phone: (858) 362-3150

17     Fax: (858) 824-9073
    pashackelford@yahoo.com

18         I certify that all parties in this case are represented by counsel who are CM/ECF

19 participants.

20

21                       _____/s/ Raymond P. Niro, Jr._____
                      Attorney for the Black & Decker Defendants

22

23                       _____/s/ Robert L. Binder_____
                      Attorney for the Phillips and Hi-Tech

24