IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLACK & DECKER INC. and BLACK & DECKER (U.S.) INC., <br><br>             Plaintiffs, <br><br>     v. <br><br> ROYAL APPLIANCE MFG. CO., d/b/a TTI FLOOR CARE NORTH AMERICA, and TECHTRONIC INDUSTRIES CO. LTD., <br><br>             Defendants. | Civil Action No. 08 cv 590 <br><br> Judge Manning <br> Magistrate Judge Keys |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' COUNTERCLAIMS

Plaintiffs Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker") respond to the Counterclaims filed on March 31, 2008 by Defendant Royal Appliance Mfg. Co. ("Royal") as follows.

### Affirmative Defense of Patent Unenforceability due to Inequitable Conduct
### (Paragraphs Incorporated in Third Counterclaim)

7.       The '303 patent application was filed on April 4, 1994 as a divisional application of previously filed patent application 08/002,132 ("the '132 application"). The '132 application was filed on January 8, 1993 and issued as U.S. Patent No. 5,331,716 ("the '716 patent").  The '303 patent issued on February 14, 1995.

**<u>Response:</u>**

Admitted.

8.       On August 30, 1994, the patent examiner issued an office action rejecting all but one of the pending claims of the '303 patent application as being unpatentable under 35 U.S.C. §§ 102 and/or 103 in view of at least three prior art references that disclosed upright vacuum cleaners. The remaining claim, claim 3, was rejected for depending from a rejected claim.

**Response:**

Admitted that during prosecution of the '303 patent application, an Office Action was issued on August 30, 1994. Denied that Royal has accurately re-stated and/or quoted the contents of the document in full context. Except as answered, the allegations are denied.

9.    In an amendment dated October 20, 1994, the applicants attempted to overcome the rejection by amending the claims to include a limitation requiring that the "length of the axially extending upper surface of the housing is relatively larger than the distance between the upper and lower housing surfaces." The applicants represented that this amendment allegedly "more clearly define[d] the present invention as it relates to a portable hand-held vacuum cleaner."

**Response:**

Admitted that during prosecution of the '303 patent application an Amendment was filed on October 18, 1994 and was received by the PTO on October 20, 1994. Denied that Royal has accurately re-stated and/or quoted the contents of the document in full context. Except as answered, the allegations are denied.

10.    Applicants' statement that this amendment "define[d] the present invention as it relates to a portable hand-held vacuum cleaner," in fact does not define a "hand-held" vacuum cleaner, and is directly contradicted by prior art that the attorney who prosecuted the '303 patent application was aware of and had reviewed. Specifically, applicants and their prosecuting attorney were aware of at least U.S. Patent Nos. 2,335,031 ("the '031 patent"); 3,564,641 ("the '641 patent"); and 4,519,113 ("the '113 patent") (collectively referred to as "the Housing Limitation Prior Art") which all show vacuum cleaners that are not hand-held, but do have a housing where the "length of the axially extending upper surface of the housing is relatively larger than the distance between the upper and lower housing surfaces."

**Response:**

Denied.

11.    Upon information and belief, the applicants and prosecuting attorney were also aware of prior art canister style vacuums where the "length of the axially extending upper surface of the housing is relatively larger than the distance between the upper and lower housing surfaces" (collectively referred to as "the Canister Prior Art").

**Response:**

Denied.

12.    In view of the amendments, applicants then represented to the patent examiner that the claims were patentable over the prior art because "applicants are the first to obtain some of the benefits of an upright vacuum cleaner in a hand-held portable vacuum cleaner." Applicants provided no other basis for patentability of the amended claims over the prior art upright vacuum cleaners that formed the basis of the patent examiner's rejection.

**Response:**

Denied.

13.    Applicants' intentional statement that "applicants are the first to obtain some of the benefits of an upright vacuum cleaner in a hand-held portable vacuum cleaner" is directly contradicted by prior art that their attorney who prosecuted the '303 patent application was aware of and had reviewed. Upon information and belief, applicants were also aware of this prior art. Specifically, applicants and their attorney who prosecuted the '303 patent application were aware of at least four prior art references which directly contradicted their representation to the patent examiner in support of patentability.  The prior art references are U.S. Patent Nos. 1,944,950 ("the '950 patent"); 4,644,605 ("the '605 patent"); 4,660,246 ("the '246 patent"); and 4,811,452 ("the '452 patent") (collectively referred to as "the Material Prior Art References").

**Response:**

Denied.

14.    The '950 patent issued on January 30, 1934 and obtains some benefits of an upright vacuum cleaner in a hand-held vacuum.  The '950 patent discloses a convertible vacuum cleaner to "very considerably reduce the expense to the average family of providing cleaning equipment both for the house and for the automobile, by providing a set of apparatus which the housewife can convert into either a floor or a hand type cleaner."

**Response:**

Denied.

15.    The '605 patent issued on February 24, 1987 and obtains some benefits of an upright vacuum cleaner in a hand-held vacuum.  The '605 patent is directed "to vacuum cleaners and more particularly to a vacuum cleaner convertible between an upright unit and a portable hand carried unit."

**Response:**

Denied.

16.    The '246 patent issued on April 28, 1987 and obtains some benefits of an upright vacuum cleaner in a hand-held vacuum.  The '246 patent is directed to a vacuum that can be converted "into an arrangement suitable for floor supported vacuuming; hand carried vacuum cleaning operation; or canister type vacuum cleaning via a flexible hose attachment."

**Response:**

Denied.

17.     The '452 patent issued on March 14, 1989 and recognizes that past vacuums have obtained some benefits of an upright vacuum cleaner in a hand-held vacuum.  The '452 patent recognizes that the '246 patent discloses a vacuum cleaner "convertible between upright and hand-held styles, with auxiliary cleaning available in either such configuration."

**Response:**

Denied.

18.     The named inventors and the attorney who prosecuted the '716 patent are the same as the named inventors and attorney who prosecuted the '303 patent.  Each of the Material Prior Art References was cited during the prosecution of the '716 patent in an information disclosure statement ("the '716 IDS") submitted to the PTO in February of 1993.  In the '716 IDS, the prosecuting attorney provided a characterization of the content of several prior art references, including the '246 patents, and stated that he was "also aware of" other prior art including the '950, '605, and '452 patents.  The '716 IDS identified over 60 prior art references, including the Housing Limitation Prior Art.

**Response:**

Admitted that Messrs. Hemmann, Sundaram and DuBois are the named inventors on the '716 and '303 patents and that attorney Barry E. Deutsch was involved in the prosecution of each of the applications leading to those patents.  Admitted that during prosecution of the '716 application an IDS was filed on February 11, 1993, which identified 62 references, including the '031, '641, '113, '950, '605, '246 and '452 patents.  Admitted that the IDS included a statement that the '246 patent discloses a "reconfigurable vacuum cleaner with an adapter and hose." Denied that Royal has accurately re-stated and/or quoted the contents of the document in full context.  Except as answered, the allegations are denied.

19.     The first office action mailed on August 30, 1994, during the prosecution of the '303 patent application, includes Form PTO-892 identifying the references cited by the patent examiner.  Nine prior art references are identified in the Form PTO-892.  The nine references cited in the Form PTO-892 includes five prior art references that were not included in the '716 IDS and four prior art references that were included in the '716 IDS.  None of the Material Prior Art References, the Housing Limitation Prior Art or the Canister Prior Art was identified in the Form PTO-892.

**Response:**

Admitted that during prosecution of the '303 application, an Office Action was issued dated August 30, 1994 which included a form listing nine references cited by Primary Examiner Moore, who was also the Primary Examiner for the '716 parent application.  Denied that Royal has accurately re-stated the contents of the document in full context.  Except as answered, the allegations are denied.

20.     There is no indication in the first office action mailed on August 30, 1994 that the Material Prior Art References, the Housing Limitation Prior Art or the Canister Prior Art were considered by the patent examiner.

**Response:**

Denied.

21.     In view of their representation about the patentability of the amended claims over the prior art and despite their knowledge about the prior art, and its contents, and the absence of any indication that the examiner considered the Material Prior Art References, the Housing Limitation Prior Art or the Canister Prior Art in preparing the first office action, the applicants and prosecuting attorney did not submit or attempt to make the examiner aware of any of the Material Prior Art References, the Housing Limitation Prior Art, the Canister Prior Art or other prior art cited in the '716 IDS during the prosecution of the '303 patent application.

**Response:**

Denied.

22.     There is no evidence or record in the '303 patent file history indicating that the Material Prior Art References, the Housing Limitation Prior Art or the Canister Prior Art were ever considered by the patent examiner during the prosecution of the '303 patent application.

**Response:**

Denied.

23.     With the exception of the four of the references identified in the Form PTO-892, there is no evidence or record in the '303 patent file history indicating that the other prior art identified in the '716 IDS was ever considered by the patent examiner during the prosecution of the '303 patent application.

**Response:**

Denied.

24.     Upon information and belief, applicants' and their attorney's incorrect statements to the patent examiner during the prosecution of the '303 patent about the state of the prior art and/or the distinction made by the amendment were made with an intent to deceive the patent examiner.

**Response:**

Denied.

25.     Upon information and belief, applicants' and their attorney's failure to bring the Material Prior Art References, the Housing Limitation Prior Art or the Canister Prior Art to the attention of the patent examiner when they knew the examiner had not considered them was made with an intent to deceive the patent examiner.

**Response:**

Denied.

26.     The claims of the '303 patent are unenforceable.

**Response:**

Denied.

## Counterclaims

1.     Counterclaim plaintiff Royal is an Ohio corporation having a principal place of business at 7005 Cochran Road, Glenwillow, Ohio.

**Response:**

Admitted.

2.     Plaintiffs' allege and on that basis Royal alleges that counterclaim defendant Black & Decker Inc. is a Delaware corporation having its principal place of business at 1207 Drummond Plaza, Newark, Delaware.

**Response:**

Admitted.

3.     Plaintiffs' allege and on that basis Royal alleges that counterclaim defendant Black & Decker (U.S.) Inc. is a Delaware corporation having its principal place of business at 701 East Joppa Road, Towson, Maryland.

**Response:**

Admitted.

4.      Plaintiffs' allege and on that basis Royal alleges that counterclaim defendants Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "Counterclaim Defendants") collectively own all rights that may exist to U.S. Patent No. 5,388,303 ("the '303 patent").

**Response:**

Admitted.

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, 1337(a), 1338(a) and 1367.

**Response:**

Admitted.

6.      Personal jurisdiction is proper in this judicial district.

**Response:**

Admitted.

7.      Venue is proper in this judicial district.

**Response:**

Admitted.

8.      Counterclaim Defendants have alleged that Royal is infringing one or more of the claims of the '303 patent by the manufacture, use, sale, importation and/or offer for sale of vacuum products identified as Dirt Devil® brand Platinum Force® (Model Nos. M08240 and M08240HD) and Power Reach® (Model Nos. M08245 and M08245X) (collectively referred to as the "Accused Products"), by knowingly and actively inducing others to infringe, and by contributing to the infringement of others by the manufacture, use, sale, importation and/or offer for sale of the Accused Products.

**Response:**

Admitted.

9.      Counterclaim Defendants are seeking damages from Royal for the alleged infringement of the '303 patent.

**Response:**

Admitted.

### First Counterclaim for Declaration of Noninfringement

10.     Royal realleges and incorporates by reference the allegations set forth in paragraphs 1-9 above.

**Response:**

Black & Decker realleges and incorporates by reference its responses to the allegations set forth in paragraphs 1-9 of Royal's Counterclaim.

11.     This is an action under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202 and pursuant to the patent laws of the United States, 35 U.S.C. § 1 et seq.

**Response:**

Admitted that Royal asserts such claims, but denied that it is entitled to any relief.

12.     Royal has not and does not directly infringe, contributorily infringe or actively induce others to infringe any valid claim of the '303 patent by the manufacture, use, sale, importation and/or offer for sale of the Accused Products or any other products.

**Response:**

Denied.

### Second Counterclaim for Declaration of Patent Invalidity

13.     Royal realleges and incorporates by reference the allegations set forth in paragraphs 1-12 above.

**Response:**

Black & Decker realleges and incorporates by reference its responses to the allegations set forth in paragraphs 1-12 of Royal's Counterclaim.

14.     This is an action under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202 and pursuant to the patent laws of the United States, 35 U.S.C. § 1 et seq.

**Response:**

Admitted that Royal asserts such claims, but denied that it is entitled to any relief.

15.     The claims of the '303 patent are invalid for failing to meet one or more of the statutory requirements of 35 U.S.C. § 101 et seq., including but not limited to 35 U.S.C. §§ 102, 103 and/or 112.

**Response:**

Denied.

### Third Counterclaim for Declaration of Patent Unenforceability

16.    Royal realleges and incorporates by reference the allegations set forth in paragraphs 1-16 [sic] above.

**Response:**

Black & Decker realleges and incorporates by reference its responses to the allegations set forth in paragraphs 1-15 of Royal's Counterclaim.

17.    This is an action under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202 and pursuant to the patent laws of the United States, 35 U.S.C. § 1 et seq.

**Response:**

Admitted that Royal asserts such claims, but denied that it is entitled to any relief.

18.    Royal realleges and incorporates by reference the allegations set forth in paragraphs 7-25 of the Affirmative Defense of Patent Unenforceability due to Inequitable Conduct.

**Response:**

Black & Decker realleges and incorporates by reference its responses to the allegations set forth in paragraphs 7-25 of Royal's Affirmative Defense of Patent Unenforceability due to Inequitable Conduct.

19.    The claims of the '303 patent are unenforceable.

**Response:**

Denied.

### BLACK & DECKER'S AFFIRMATIVE DEFENSES

Black & Decker asserts the following Affirmative Defenses against Royal's Counterclaims and reserves the right to further amend its responses as additional information becomes available.

1.     The claims of United States Patent No. 5,388,303 are valid, enforceable and infringed by Defendants.

2.     Defendants have also knowingly contributed to or induced the infringement of others by willfully and intentionally aiding, assisting and encouraging such infringement.

3.     Defendants' infringement has been willful, deliberate and objectively reckless.

4.     During prosecution of the application leading to the '303 patent, neither the Applicants nor the prosecuting attorneys made a deliberate decision to withhold a known, material, non-cumulative reference from the PTO.

5.     During prosecution of the application leading to the '303 patent, neither the Applicants nor the prosecuting attorneys made any remarks which would constitute a material omission or misrepresentation.

6.     During prosecution of the application leading to the '303 patent, neither the Applicants nor the prosecuting attorneys had any intent to deceive with respect to the remarks made to the PTO.

7.     Black & Decker adopts and incorporates herein all affirmative defenses available pursuant to Federal Rule of Civil Procedure 8 (or any applicable statute or regulation), to the extent the facts known at this time would make any of said defenses available or facts developed in the future would make same available.

WHEREFORE, Black & Decker requests that judgment be entered against Royal and in Black & Decker's favor on the Counterclaim brought by Royal.  Black & Decker further requests that it be granted all of the relief requested in its Complaint.

### JURY DEMAND

Black & Decker demands a trial by jury on all issues properly triable to a jury.

Respectfully submitted,

_____/s/ Raymond P. Niro, Jr._____
Raymond P. Niro, Jr.
Paul C. Gibbons
Robert A. Conley
Laura A. Kenneally
NIRO, SCAVONE, HALLER & NIRO
181 West Madison, Suite 4600
Chicago, Illinois 60602 4515
Phone: (312) 236 0733
Fax: (312) 236 3137
rnirojr@nshn.com; gibbons@nshn.com
conley@nshn.com; lkenneally@nshn.com

Attorneys for Black & Decker Inc. and Black &
Decker (U.S.) Inc.

11

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2008, I caused the foregoing PLAINTIFFS' RESPONSE

TO DEFENDANTS' COUNTERCLAIMS to be electronically filed with the Clerk of the Court

using the CM/ECF system which will send notification of such filing to:

Gary M. Ropski
Robert S. Mallin
Manish K. Mehta
BRINKS, HOFER, GILSON & LIONE
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL 60611-5599
Phone:  (312) 321-4200
Fax:  (312) 321-4299
gropski@usebrinks.com
rmallin@usebrinks.com
mmehta@usebrinks.com

Attorneys for Defendants
Royal Appliance Mfg. Co., d/b/a TTI Floor
Care North America, and Techtronic Industries
Co. Ltd.

I certify that all parties in this case are represented by counsel who are CM/ECF

participants.

_____/s/ Raymond P. Niro, Jr._____
Attorney for Black & Decker